**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ENID BONILLA,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLIZING, INC., ALAN GODIN and DAVE RICHARDS,<br><br>Defendants. | C.A. No. 07-331S |

**DEFENDANTS ELECTROLIZING, INC., ALAN GODIN AND DAVID RICHARDS' MEMORANDUM IN OPPOSITION TO MOTIONS TO COMPEL**

Defendants Electrolizing, Inc., Alan Godin, and Dave Richards submit this memorandum in opposition to Plaintiff's Motions to Compel.

## INTRODUCTION

Plaintiff's non-traditional approach of filing two motions to compel responses to her written discovery (one for the document requests; one for the interrogatories) is emblematic of the reasons why this case is in its present state. Although Defendants have consistently attempted to work with Plaintiff in discovery and have provided more information and documents than Plaintiff has requested, she continues to insist – without any conceivable basis – that Defendants must have more responsive information. For the most part, however, she cannot identify what else may exist. To the extent that she feels she is entitled to additional information regarding Electrolizing's payroll and employee list, she is simply incorrect – she has all the documents and information responsive to her

requests and more. This Court cannot compel the production of discovery that does not exist, particularly when Plaintiff cannot identify what she wants with any specificity.

To the extent Plaintiff seeks to compel additional information regarding Electrolizing's subcontractors and other employee who were either terminated or granted medical leave, her request also should be denied. The information she seeks is overly broad and neither relates to the issues in this case nor is likely to lead to the discovery of admissible evidence. Similarly, she should not be permitted to discover Alan Godin personnel file, which contains personal, confidential and irrelevant information.

## TRAVEL OF THE CASE

Plaintiff's Complaint was filed on August 31, 2007, alleging that Defendants had violated Title VII by discriminating and retaliating against her on the basis of her race, sex and place of ancestral origin and violated the Family Medical Leave Act ("FMLA"). Due to the simplicity and size of this case, the Court, at the Rule 16 Conference, set 4 months for discovery. The Court also waived the requirement that Defendants seek leave to file for summary judgment, presumably because it was apparent that some or all of Plaintiff's claims were likely to be the subject of a motion challenging their legal viability.

The parties exchanged written discovery in November and December 2007, and Defendants began noticing depositions in January 2008. Although Plaintiff failed to respond to Defendants written discovery requests in a timely fashion and first produced discovery on February 29, 2007 – the original discovery closure deadline, Defendants promptly responded to discovery, providing responses on December 22, 2007. Despite

receiving Defendants' discovery responses in a timely fashion, Plaintiff waited more than three months before moving to compel, filing the current motion on March 31, 2008.

**ARGUMENT**

**PLAINTIFF'S MOTION TO COMPEL IMPROPERLY SEEKS MATERIALS THAT EITHER DO NOT EXIST OR THAT ARE IRRELEVANT AND CONFIDENTIAL**

The scope of discovery is a matter of discretion for the trial court. *Mack v. Great Atlantic & Pacific Tea Co., Inc.*, 871 F.2d 179, 186 (1st Cir. 1989) ("Trial courts enjoy a broad measure of discretion in managing pretrial affairs, including the conduct of discovery."). However, the scope of discovery is generally broad, as a party's discovery request need only be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Proc. 26(b)(1); s*ee also In re Public Offering PLE Antitrust Litigation*, 427 F.3d 49, 51 (1st Cir. 2005). While this requirement contemplates a broad scope of discovery, "limitations come into existence when the inquiry touches upon the irrelevant." *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947).

The scope of discovery can also be limited when a party attempts to delve into personal and confidential information. The First Circuit has described the appropriate method by which courts should evaluate such requests:

> [T]he movant must make a prima facie showing that his claim of need and relevance is not frivolous. Upon such a showing, the burden shifts to the objector to demonstrate the basis for withholding the information. The court then must place those factors that relate to the movant's need for the information on one pan of the scales and those that reflect the objector's interest in confidentiality and the potential injury to the free flow of information that disclosure portends on the opposite pan.

*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 (1st Cir. 1998) (internal citations omitted). Accordingly, the courts must balance the privacy interest that would be impinged by the request with the need for discovery.

Contrary to Plaintiff's suggestion, employment discrimination cases are not subject to more liberal discovery rules than other cases. To be sure, neither the First Circuit, nor any of its district courts, have adopted a rule broadening the scope of discovery as a general matter in employment discrimination cases. *See, e.g.*, *Rankin v. Liberty Mut. Ins. Co.*, 50 F.3d 1, 1 (1st Cir. 1995) (discussing the scope of discovery in a Title VII case without reference to any particularized concerns that arise in discrimination cases, but focusing on the individualized facts of the case). Nor do any of the cases cited by Plaintiff actually stand for the proposition or support the position that Title VII discovery is exceptionally broad. *See*, e.g., *James v. Newspaper Agency Corp.*, 591 F.2d 579, 582 (10th Cir. 1979) (limiting discovery and declining even to suggest that the scope of discovery should be broadened for discrimination cases). Similarly, the language that Plaintiff quotes and attributes to both *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975), and *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973), to wit – "[t]he scope of discovery is especially broad in Title VII cases" – does not appear in either case and Plaintiff appears to have made up the quote.

**A. Defendants Have Fully Responded To Document Request No. 1 And Interrogatory 14 And Plaintiff Has No Legitimate Basis For Speculating That Additional Responsive Materials Exist**

Despite clear evidence to the contrary, Plaintiff speculates that Defendants have not fully responded to her Document Request No. 1[1] and Interrogatory No. 14.[2] Her baseless speculation, however, is an insufficient basis for granting the motion. This is particularly true when one considers the responsive evidence actually produced by Defendants.

Document Request No. 1 seeks payroll records and Defendants have more than fully complied with this request. Defendants provided copies of all payroll runs from January 10, 2005 to March 3, 2006, despite the fact that the request only sought records from August 1, 2005 to February 24, 2006. As has been the case throughout discovery, Defendants provided more than Plaintiff originally asked for voluntarily in an effort to cooperate and avoid the need for Plaintiff to file an additional written request, or to involve the Court in needless motions to compel.

In her motion to compel, Plaintiff explains that she actually seeks a list of all employees employed each week during the weeks that Plaintiff was employed. As an initial matter, this is not what she asked for; she asked for payroll records and got them. Moreover, defendants do not maintain a list of all employees employed each week. So,

[1] **REQUEST NO. 1**: For the time period beginning on August 1, 2005 and ending on February 24, 2006, please provide all of your employee payroll data for those employed at the 20 Houghton Street Facility, including, but not limited to, payroll statements, payroll ledgers, payroll journals, cash disbursement journals, spreadsheets, and 941 Tax Forms submitted to the IRS. For privacy purposes, kindly redact all employees' Social Security numbers.

[2] **INTERROGATORY NO. 14**: From 1999 up until the present time, please indicate whether you have ever allowed leave under the FMLA to any current or former employees and provide the following information for each employee [. . .]

[3] **INTERROGATORY NO. 17**: From 1999 to the present time, please state the name of each and every person you have terminated at the 20 Houghton Street Facility or the 10 Houghton Street Facility and for each terminated employee set forth [. . .]

an order compelling such production would require Defendants to produce a document that does not exist.

Indeed, a bit of history into the discovery process is instructive as to not only this request but each of the requests that make up Plaintiff's motion to compel. By way of background, Plaintiff's request for payroll records relates to the issue of whether Defendant Electrolizing employed 50 or more workers for 20 weeks "in the current or preceding calendar year." 28 U.S.C. § 2611(4)(A)(i). After Defendants provided all of Electrolizing's payroll records for the relevant period, plaintiff insisted that there "had to be more documents," but she could not articulate what they might be. Plaintiff subsequently subpoenaed certain tax records for the Rhode Island Tax Administrator. When Defendants contacted Plaintiff to enquire as to the nature of this subpoena and learned that they included quarterly lists of employees submitted to the Division of Taxation, they volunteered to provide the tax records so that Plaintiff would not have to wait for the response to the subpoena or run the risk of non-compliance or a motion to quash by the State.

Plaintiff subsequently shared with Defendants her written analysis of Electrolizing's employee count on the basis of the material provided. Upon review of the analysis, it became apparent that Plaintiff's methodology was flawed, because it did not contain the various employees' start dates and termination dates. Because Plaintiff had never requested this information in discovery, and the analysis was impossible without it, Defendants provided it voluntarily and of their own accord – to which Plaintiff's counsel remarked: "my request included all payroll records, which normally includes hire and termination dates." In fact, payroll records do not normally include hire and fire dates,

they normally contain a list of persons paid on a given payroll date, the amount of the paycheck, withholding information, direct deposit information and the like. Hire and fire dates are usually found – and certainly in the case of Electrolizing – in the employees' personnel files.

Plaintiff now has the payroll records for the relevant time periods and the hire and fire dates for which she forgot to ask. This is all that is needed to complete her analysis and there is nothing to compel and no reasonable basis to believe that more documents responsive to Document Request No. 1 exist.

Interrogatory No. 14 seeks information about employees of Electrolizing granted leave under the FMLA – a statute which does not apply to Electrolizing. After objecting, Defendants answered this interrogatory stating "in the past [Electrolizing] has allowed employees who have requested and have demonstrated good cause to take medical leave. Electrolizing discontinued the practice of allowing employees to take medical leave, however, prior to the time that Plaintiff was hired by Electrolizing." At his deposition, Electrolizing's owner, Chris Bejbl, explained that Electrolizing does not offer medical leave – under the FMLA or otherwise –because of the size of the business. Bejbl Dep. at 42:21 – 45:14 (attached as Exhibit 1). Specifically, Mr. Bejbl testified:

> Q. Okay. Page 22, based on what is in this document, did the company offer the Family Medical Leave Act at the time of Ms. Bonilla's employment, or did it represent that it did?
>
> MR. MILLSOM: Objection.
>
> A. The company policy has it in there. This was an edition that was in place when I arrived. As I learned more specifically the rules of FMLA, that's when I realized it didn't apply to a company like ours.
>
> MR. GAGLIARDI: Yet a new hire who is -- I'm sorry, could you read back his answer?

> (ANSWER READ BACK)
>
> Q. Is this benefit, is leave under the FMLA something that you changed in the new company information manual?
>
> A. Yes.
>
> Q. It's no longer in your, it's no longer offered as a benefit, correct?
>
> A. Correct.

Bejbl Dep. Tr. at 44:20 – 45:14. Mr. Bejbl also testified about the one employee of whom he was aware who had received leave in the past:

> Q. "Electrolizing states that in the past it has allowed employees who have requested and demonstrated good cause to take medical leave." Are you able to give me the name of an employee who requested and demonstrated good cause to take medical leave and who received it in the past?
>
> A. I recall one time it was Michelle Carroccio.
>
> Q. When was that?
>
> A. I don't know.
>
> Q. Was that before or after Ms. Bonilla's employment?
>
> A. It was before, but, you know, I don't know the time.
>
> Q. Was it before 2005?
>
> A. Yes, it was.
>
> Q. How long of a leave was she given?
>
> A. I don't know. I don't recall. It was for a baby; I remember that.
>
> Q. Okay. Was there anybody else?
>
> A. I don't recall anyone else.

Bejbl Dep. Tr. at 48:18 – 49:12. When questioned whether leave would be granted under those circumstances now, Mr. Bejbl answered that he did not know. *Id.* at 50:10-20. It is plain that, through the answer to the Interrogatory and the subsequent questioning at deposition, Defendants do not provide leave under the FMLA and that in the one instance in when an employee was allowed to take medical leave, it predated Plaintiff's alleged request. Thus, there is no additional responsive information with regard to Interrogatory No. 17.

Moreover, even if additional responsive information existed, Defendants should not be compelled to respond to Interrogatory No. 14 because it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. *See* Fed. R. Civ. Proc. 26(b). Electrolizing's past practices regarding medical leave have no bearing on the FMLA issues in this case, viz., whether the a statute applies (*i.e.*, whether Electrolizing employed 50 employees during the relevant time period) or whether Electrolizing violated the FMLA. FMLA applicability is not in any way determined by the past practices of an employer – there is no "FMLA by estoppel" or "FMLA opt-in" provision that might grant Plaintiff statutory rights she would not otherwise have. Similarly, whether other employees have been granted medical leave, or a health sabbatical, or maternity leave, or any other type of leave, has no impact on whether Plaintiff was terminated for a valid business reason.

Ultimately, Defendants have candidly and fully responded to Plaintiff's Document Request No. 1 and Interrogatory No. 14. Defendants have provided information to Plaintiff that was not covered within the scope of her requests, but was helpful to Plaintiff in undertaking the inquiry to which the request was directed. Plaintiff has been

unable to articulate with any specificity what else she believes may exist. Defendants' cannot be made to provide additional responses if they are not privy to what precisely the Plaintiff seeks. *See Phinney v. Paulshock*, 181 F.R.D. 185, 203 (D.N.H. 1998) (holding that the discovery duty is fulfilled once a reasonable inquiry has been made as to the existence of responsive documents).

### B. Documents Requests 4 and 5 and Interrogatory 17 Seek Information That Is Neither Relevant To The Issues In This Case Nor Likely To Lead To The Discovery of Admissible Information

In Interrogatory No. 17,[3] Plaintiff requests a list of all employees terminated by Electrolizing since 1999. She argues that this information bears on the issue of whether Defendants' non-discriminatory reason for the termination of Plaintiff (*i.e.*, excessive absenteeism) is a pretext. Defendants have objected to this interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, because the nearly 10 year scope of time covered by the interrogatory (1999 to the present) is too broad and the request is not limited as to the nature of the termination, *i.e.*, even voluntary terminations or employee deaths are within the scope of the request.

Even in the case that Plaintiff cites for the proposition that discovery covering several years prior to the complained of conduct is relevant, the court limited the discovery to a certain department within the company, as opposed to the entire company. *See James*, 591 F.2d at 582. The court held that the plaintiff was not "unreasonably restricted" by the trial court's decision to limit discovery of records to a four year period covering only the plaintiff's department within the company – as opposed to the requested eight year period for the entire company. *Id.* Such limitations make sense because the only relevant inquiry in a discrimination case is about "similarly situated

employees." *See Booker v Mass. Dept. of Public Health*, 527 F. Supp.2d 216, 227 (D.Mass. 2007) ("A plaintiff does not carry her burden of demonstrating pretext on a motion for summary judgment where she provides merely 'sketchy evidence lacking a sufficient foundation for a legally relevant comparison' of allegedly similarly situated employees."). Nothing in Plaintiff's request seeks to determine whether any of the terminated employees that she seeks to discover were similarly situated to her. Accordingly, this court should deny Plaintiff's motion to compel with respect to this request because it is overly broad, unduly burdensome, and not reasonably designed to lead to the discovery of admissible evidence.

Document Request Nos. 4 and 5[4] seek irrelevant documents regarding payments by Electrolizing and one of its fictitious business names, ME-92, to subcontractors. The purported reason asserted by Plaintiff for seeking this information is to determine whether Electrolizing was mischaracterizing employees as subcontractors. [5] Plaintiff,

---

[4] **REQUEST NO. 4**: For the time period beginning on August 1, 2005 and ending on February 24, 2006, please provide documentation of all payments you made to all subcontractors who provide service to you or on your behalf at the 20 Houghton Street Facility including, but not limited to, all invoices, bills, and cancelled checks.

**REQUEST NO. 5**: For the time period beginning on August 1, 2005 and ending on February 24, 2006, please provide documentation of all payments you made to all subcontractors who provided service to you or on your behalf at the 10 Houghton Street Facility including, but not limited to, all invoices, bills, and cancelled checks.

[5] Typical of Plaintiff's argument in this regard – and in the case as a whole – is her bald and completely unsupported assertion in her motion, regarding an individual named Kenneth B. Roark, who she contends worked as a "maintenance man" for Electrolizing throughout the period of her employment, but "does not appear on the company payroll" until Plaintiff's final pay period. Pl's Br. at 10. In fact, Plaintiff is wrong. Mr. Roark did not work for Electrolyzing as a maintenance man or in any other capacity prior to February 10, 2006. Ironically, as Alan Godin testified in his deposition, Mr. Roark was the employee hired to replace Plaintiff after she was terminated for excessive absenteeism. Godin Dep. Tr. at 56:12-23 (attached as Exhibit 2) (referring to Roark as "Ken O'Rourke").

however, is confusing the term "subcontractor" with the term "independent contractor." In essence, Plaintiff's purpose in these requests is to attempt to show that certain independent contractors retained by Electrolizing should be considered employees for the purpose of determining whether Electrolizing is subject to the provision of the FMLA.

To this end, Plaintiff refers to the definition of "employee" set forth in 29 C.F.R. § 805.105. This provision, however, does not frame the relevant inquiry because it does not address how to determine whether an individual is properly classified as an independent contractor or an employee. To make this determination, the court must examine:

> 1) the degree of control exercised by the employer over the worker; 2) the worker's opportunity for profit or loss; 3) the worker's investment in the business; 4) the degree of skill and independent initiative required to perform the work; 5) the permanence or duration of the working relationship; and 6) the extent to which the work is an integral part of the employer's business.

*Bolduc v. Nat'l Semiconductor Corp.*, 35 F.Supp. 2d 106, 112 (D. Me. 1998). None of those considerations are evidenced by documents that show how and when independent contractors were paid.

What Plaintiff seeks is a fishing expedition through Electrolizing's accounts payable and vendor list. Electrolizing's owner, Chris Bejbl explained very clearly in his deposition the nature of Electrolizing's relationship with its non-payroll employee independent contractors:

> Q. Does the company utilize subcontractors; do you utilize any subcontractors for any purpose; do you have any subs?
>
> A. Yes, such as electricians and plumbers, that type of thing.
>
> Q. Okay. How often would you employ the use of an electrician or plumber?

A. There is no set schedule. If something breaks that we don't have the ability to fix in-house, we call an expert in.

Q. Are they there regularly?

A. No.

Q. Okay. So do these electricians or plumbers show up there every day?

A. No.

Q. Anybody else besides -- sorry, which electricians do you use?

A. We've used several agencies. None of the names come to mind. Phone book type stuff, find an electrician in the phone book, call them in.

Q. Anybody else besides an electrician and a plumber?

A. Well, people that work on boilers. Those people come in and do an annual inspection. We have, I believe, twice a year someone comes in and calibrates ovens and rectifiers.

Bejbl Dep. Tr. at 23:11 – 24:11. As this deposition testimony plainly demonstrates, Electrolizing's practices with respect to independent contractors are irrelevant, and to permit an exploration into Electrolizing's payments of its independent contractors would be a worthless exercise, and certainly not worth the burden that it would place on defendants to collect and organize such records.

**C. Document Request No. 7 Seeks The Production Of Materials That Are Irrelevant, Personal and Confidential**

Plaintiffs Request for Production No. 7 seeks "Alan Godin's complete personnel file." Defendant objects to that request on the grounds that it is overly broad, not reasonably designed to lead to the discovery of admissible evidence, and also that the information sought is personal and confidential. The full substance of Plaintiff's

argument that Mr. Godin's entire personnel file should be disclosed is her desire to discover whether he has been reprimanded for insensitivity in connection with fellow employees' race or gender.

In *Whittingham v. Amherst College*, 164 F.R.D. 124, 126-28 (D. Mass. 1995), the Massachusetts Federal District Court undertook a detailed discussion regarding the discoverability of personnel files in the Title VII context. In that case, the plaintiff sought the personnel files of previous deans at the college. *Id.* at 126. The court noted that the personnel files of previous deans were not relevant to the question of the actions of the current dean. *Id.* at 127. The court also rejected the notion that the personnel files might be relevant to a finding of a pattern or practice of discrimination. *Id.* at 127. Most notably, the court recognized that "personnel files contain perhaps the most private information about an employee within the possession of an employer" and that in order to compel discovery, the requesting party must overcome the privacy interests of the individuals. *Id.* at 127-28. Other Federal District Courts have limited the disclosure of personnel files for similar reasons. *See Cason v. Builders Firstsource-Southeast Group, Inc.*, 159 F.Supp. 2d 242, 247-48 (W.D.N.C. 2001) (denying discovery of certain personnel files on the grounds that requesting party failed to show relevancy); *Washington v. Thurgood Marshall Academy*, 232 F.R.D. 6, 12 (D.D.C. 2005) (recognizing the need to explain why an entire personnel file is relevant when requesting it, and rejected idea that when part of a personnel file might be relevant, the entire file is discoverable).

In this case, Plaintiff alleges that Mr. Godin made some remarks to her that were insensitive, and that she complained about those remarks. However, Mr. Godin's actions

are not an integral part of her theory of recovery. *See Cason*, 159 F.Supp.2d at 247. Nor does she allege that Mr. Godin was an individual similarly situated to her who was treated differently for a discriminatory reason. *Whittingham*, 164 F.R.D. at 127. Rather, she seeks the discovery of Mr. Godin's personnel file in order to discover whether any supervisor at Electrolizing took any disciplinary action against him.[6] Mr. Godin's "most private information" is contained within the file sought, *id.*, yet Plaintiff has not even attempted to explain why she needs to discover his entire personnel file.

This situation is precisely the circumstance in which personnel files are to be protected from discovery. The information in Mr. Godin's personnel file is not relevant for two reasons. First, he is not similarly situated to Plaintiff in this case. *See Booker*, 527 F. Supp.2d at 227. Second, Mr. Godin's conduct does not constitute an integral part of her theory of recovery, because it is the actions of Plaintiff's supervisors that could potentially be actionable. Consequently, Mr. Godin's privacy interests far outweigh Plaintiff's need for discovery of this irrelevant information. At best, Plaintiff may be entitled to discovery of any reprimands of Mr. Godin for the complained-of conduct. However, the request seeks the personnel file in its entirety without any explanation as to relevance or need. Accordingly, this Court should deny the motion to compel a response to this request.

---

[6] It is worth noting that, although Mr. Godin is a named defendant in this case, there are no allegations that he was Plaintiff's supervisor in the complaint, nor has any evidence been produced thus far in discovery that would indicate that Mr. Godin has any potential liability in this matter.

## CONCLUSION

For the reasons set forth in this memorandum, Defendants respectfully requests that this Court deny Plaintiff's Motions to Compel in their entirety.

Dated: April 17, 2008
Providence, Rhode Island

ELECTROLIZING, INC., ALAN GODIN and DAVID RICHARDS,

By their attorneys,

*/s/ Geoffrey W. Millsom*

Richard R. Beretta (#4313)
Geoffrey W. Millsom (#6483)
Adam M. Ramos (#7591)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
(401) 274-7200
Fax: (401) 751-0604/351-4607
gmillsom@apslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the within Memorandum in Opposition to Motion for Leave to Amend Complaint through the ECF system on the 17th day of April, 2008, and that notice will be sent electronically to the all counsel who are identified on the Mailing Information for Case No. 07-331S.

*/s/ Geoffrey W. Millsom*

*451628_1.doc*