UNITED STATES DISTRICT COURT FOR THE DISTRICT (

Enid Bonilla : :

VS. : C.A. NO.: 07-331A

Electrolizing, Inc., :Alan Godin, and David :

Richards :

DEPOSITION OF CHRIS BEJBL, a Witness forthe above-entitl] Plaintiff, before Elizabeth Greeley, Notary Public, inand for the Stat Adler Pollock and Sheehan, Citizens Plaza, Providence,Rhode Island, or

PRESENT:

FOR THE PLAINTIFF.........LAW OFFICE OF MARK GAGLIARDI

FOR THE DEFENDANTS........ADLER POLLOCK & SHEEHAN

BY: GEOFFREY MILLSOM, ESQUIRE

ALLIED COURT REPORTERS 115 PHENIX A\

CRANSTON, RI 02920

MR. MILLSOM: I'm going to object to that question.

Q. All right. We'll call it company information, company information manual. That's what the title says?

A. Yes.

Q. That's fair. How is the updated company information manual different from this one, in what material ways?

A. I'm not sure.

Q. What did you change?

MR. MILLSOM: Objection to the use of the word material.

A. I would have to just refer to it. I don't want to speculate what has been changed. It's something that could be verified one way or another.

Q. Why did you change it?

A. Because I thought it needed an update. I probably -- I don't know. There are items that, perhaps, I wanted to change.

Q. Does your company currently provide leave under the Family Medical Leave Act to employees?

A. No.

Q. Have you ever offered leave under the Family Medical Leave Act to employees?

A. Yes.

Q. When did you discontinue offering family leave under the Family Medical Leave Act?

A. I don't recall.

Q. Did you offer leave under the Family Medical Leave Act during Ms. Bonilla's employment in 2005?

A. I don't believe so, but I'm not sure.

Q. I'm going to direct you to Page 22 in that exhibit. Before we get to Page 22, this document on the front, what is the date of this revised company information manual?

A. It says February 1, 2000.

Q. When was Ms. Bonilla employed; when did she commence working?

A. I don't know.

Q. If I showed you a copy of her personnel file, would you be able to verify her start date?

A. I have no reason to believe that it wouldn't be accurate.

Q. Okay. Does March 2004 sound accurate?

A. Again, I don't have that information.

MR. GAGLIARDI: Can we stipulate to this without me having --

MR. MILLSOM: Why don't you represent its March 2004, and let him answer on the basis of your

representation.
Q. If Ms. Bonilla, her employment commenced in March of 2004, assuming that that number is accurate --
MR. MILLSOM: Are you representing that that's accurate?
MR. GAGLIARDI: Yes.
MR. MILLSOM: Answer the questions about her on the basis of his representation in March '04.
Q. My review of her employment file says her employment commenced in March of 2004. The question I have is, was this the company information manual that was provided to her upon her hiring?
MR. MILLSOM: Objection.
A. I would -- I don't know. The time frames, obviously, match up. I don't know what physically was handed to her, though.
Q. If, in fact, a company information manual was handed to her, it would be this one, correct?
A. Likely, yes.
Q. Okay. Page 22, based on what is in this document, did the company offer the Family Medical Leave Act at the time of Ms. Bonilla's employment, or did it represent that it did?
MR. MILLSOM: Objection.
A. The company policy has it in there. This was

an edition that was in place when I arrived. As I learned more specifically the rules of FMLA, that's when I realized it didn't apply to a company like ours.

MR. GAGLIARDI: Yet a new hire who is -- I'm sorry, could you read back his answer?

(ANSWER READ BACK)

Q. Is this benefit, is leave under the FMLA something that you changed in the new company information manual?

A. Yes.

Q. It's no longer in your, it's no longer offered as a benefit, correct?

A. Correct.

Q. Is it fair to say that an employee that was hired and was given this manual reasonably believed they had leave under the Family Medical Leave Act?

MR. MILLSOM: Objection.

A. I'm not sure I could answer that.

Q. Well, it says it on Page 22, correct?

A. No, but you're asking me is it fair to say that an employee would believe that. I don't know how to, I can't speak for that given employee. It's in there. I acknowledge that it's in there.

Q. These were all given to employees upon their

hire?

A. That's correct.

Q. Mr. Bejbl, do you remember being served with interrogatories in this matter which are a list of questions by Ms. Bonilla?

A. Yes.

MR. GAGLIARDI: I'm going to add this as Exhibit D.

(PLAINTIFF'S EXHIBIT D MARKED FOR ID)

Q. Does this document look familiar? These are Plaintiff's, Ms. Bonilla's first set of interrogatories propounded to the Defendant. Do you remember these; do you remember reviewing these answers before you signed them?

A. Yes.

Q. Can you turn to the last page; is that your signature on the last page?

A. Yes.

Q. Do you realize the significance of that, signing that under oath?

A. I do.

Q. I want to direct your attention to interrogatory number 14, your answer to that. Interrogatory 14 asks -- could you read that for the record, please? I don't have a copy.

THE WITNESS: How much do you want me to read?

MR. GAGLIARDI: Just the first paragraph.

A. "From 1999 up until the present time please indicate whether you have ever allowed leave under FMLA to any current or former employees and provide the following information for each employee."

Q. Okay. Could you read your answer, please, for the record?

A. "Electrolizing objects to this interrogatory on the basis it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Electrolizing also objects to this interrogatory on the basis that it seeks confidential personnel information. Subject to and without waiving the foregoing objections and the general objections, Electrolizing states that in the past it has allowed employees who have requested and demonstrated good cause to take medical leave. Electrolizing discontinued this practice of allowing employees to take medical leave, however, prior to the time that Plaintiff was hired by Electrolizing."

Q. Is that a true statement?

A. To the best of my knowledge, yes.

Q. Your answer says that you have, the company

offered FMLA in the past for good cause?

MR. MILLSOM: No, it doesn't. Objection.

MR. GAGLIARDI: I'll strike that.

Q. It says, the answer says that Electrolizing offered it in the past for good cause; is that correct?

MR. MILLSOM: Objection. You're using the term FMLA leave. That is not what the answer says, and that's not what he testified to.

MR. GAGLIARDI: Okay. I'll withdraw that.

Q. The answer states that the company offered leave in the past for good cause; is that fair to say that's your answer?

MR. MILLSOM: Objection. That's not the answer. Do you want my copy?

MR. GAGLIARDI: Yes.

Q. "Electrolizing states that in the past it has allowed employees who have requested and demonstrated good cause to take medical leave." Are you able to give me the name of an employee who requested and demonstrated good cause to take medical leave and who received it in the past?

A. I recall one time it was Michelle Carroccio.

Q. When was that?

A. I don't know.
Q. Was that before or after Ms. Bonilla's employment?
A. It was before, but, you know, I don't know the time.
Q. Was it before 2005?
A. Yes, it was.
Q. How long of a leave was she given?
A. I don't know. I don't recall. It was for a baby; I remember that.
Q. Okay. Was there anybody else?
A. I don't recall anyone else.
Q. Your answer says that Electrolizing discontinues the practice of allowing employees to take medical leave prior to Ms. Bonilla's hiring, which was 2004.
A. Okay.
Q. So that -- what was the company's policy with regard to that?
MR. MILLSOM: Objection. Do you understand the question?
THE WITNESS: No, I don't.
MR. GAGLIARDI: That wasn't a good question. I'll take it back.
Q. There was a policy, and then it changed. The policy was if you demonstrated good cause to take

medical leave and you requested it, we could give it to you. That was the policy, right?
A. At one time, yes.
Q. So what's the policy now?
A. The policy is that I don't observe the FMLA due to the size of our business.
Q. Well, was this leave to Michelle Carroccio under an FMLA leave?
A. I don't recall how it was defined.
Q. So if someone -- what if Michelle Carroccio has another baby, would she be given medical leave?
A. I don't know. It depends.
Q. Well, you must have a policy in place, correct; people have babies?
A. Well, I don't have a policy in effect for that, actually.
Q. If you go back to the office today and someone says, "I'm pregnant. I'm going to have a baby. I want leave," what would your answer be?
A. I don't know.
Q. Let's talk about the company's attendance policy. What exactly, what is your attendance policy?
A. Attendance policy is to be on time and show up for each day that you're expected to show up, Monday through Friday.