**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ENID BONILLA,<br>Plaintiff | : | |
| v. | : | C.A. No. 07-331S |
| ELECTROLIZING, INC.,<br>ALAN GODIN, *alias*,<br>DAVE RICHARDS, *alias*, and<br>any and all defendants,<br>Defendants | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO QUASH PLAINTIFF'S SUBPOENA TO ADP, INC.**

Plaintiff Enid Bonilla submits this memorandum in opposition to Defendants Electrolizing, Inc.'s, Alan Godin's, and Dave Richards's Emergency Motion to Quash Plaintiff's Subpoena to ADP, Inc. dated April 23, 2008. For the reasons stated herein, the court should deny Defendants' Emergency Motion to Quash.

**INTRODUCTION**

This is suit by Plaintiff Enid Bonilla against her former employer, Electrolizing, and two of its employees, David Richards, and Alan Godin for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

A vigorously contested issue in this case is whether Defendant Electrolizing employed fifty of more workers during at least twenty nonconsecutive weeks in 2005, thereby subjecting the company to FMLA compliance in 2006, the year the company terminated Plaintiff's employment.

Through discovery, Electrolizing has produced portions of its payroll records for all of 2005 and several weeks of 2006, namely thirty-one bi-weekly check registers (the "Check Registers") representing a list of employees who received paychecks for each bi-weekly pay period. At first blush, the Check Registers indicate that the company employed fewer than fifty employees during 2005. However, after much diligence and detective work, Plaintiff is able to articulate that the Check Registers omit several part-time workers, thus incorrectly skewing the number of workers to below the fifty employee threshold. When adding these part-time workers, who were all employed by Electrolizing for the entire year of 2005, to those employees listed in the Check Registers, the total number of employees Electrolizing employed in 2005 hovers at or slightly above the fifty employee threshold.

Moreover, the Check Registers omit the inclusion of Christopher Bejbl, Electrolizing's General Manager and a shareholder of either Electrolizing or its parent company. The Defendants have argued that Mr. Bejbl is not an employee of Electrolizing, despite his title as General Manager, but merely a shareholder of the company or its parent company. Therefore, Defendants argue that Mr. Bejbl should not be counted towards the fifty employee threshold - yet another area of considerable disagreement between the parties.

On April 4, 2008, Plaintiff deposed Christopher Bejbl. During Mr. Bejbl's deposition, Plaintiff learned for the first time that: (1) Michelle Carroccio was responsible for handling Electrolizing's payroll in 2005; and (2) Ms. Carroccio is not currently employed at Electrolizing.

On or about April 23, 2008, Plaintiff's attorneys, after much diligence, were successful in locating and interviewing Ms. Carroccio. Ms. Carroccio claims that during her employment with Electrolizing, ADP, Inc. ("ADP"), located at 2290 Pawtucket Avenue, East Providence, RI, produced Electrolizing's payroll for several years and that Mr. Bejbl received a paycheck regularly along with the company's remaining employees. Ms. Carroccio claims that when Electrolizing discontinued using ADP

to process its payroll, the new payroll company did not issue a paycheck to Mr. Bejbl along with the company's remaining employees.

On April 23, 2008, Plaintiff issued a subpoena to ADP requesting Electrolizing's payroll records from 1997, the date Mr. Bejbl commenced working at Electrolizing to 2005, the year prior to Plaintiff's termination.

## ARGUMENT

### II. THE ADP SUBPOENA SEEKS INFORMATION THAT IS RELEVANT AND SUBJECT TO DISCOVERY.

Data sought by [a] subpoena *duces tecum* must be relevant to the inquiry at hand . . . . *Walling v. American Rolbal Corp.*, 135 F.2d 1003 (2d Cir. 1943) (citing *Fed'l Trade Comm'n v. American Tobacco Co.*, 264 U.S. 298, 307 (1924). For the reasons discussed below, the ADP subpoena is relevant and subject to discovery.

**A. Whether Electrolizing has treated Christopher Bejbl as an employee in the past by issuing him a paycheck regularly with its remaining employees is relevant to determine whether Mr. Bejbl was "employed" by Electrolizing for the purposes of the FMLA.**

The definition of "employ" for purposes of FMLA is taken from the Fair Labor Standards Act, 29 U.S.C. § 203 (g) (2006).[1] At his deposition, Mr. Bejbl claimed that Electrolizing has been paying him a salary since he began working for the company in 1997 (Dep. of Christopher Bejbl at 21:19-21, the relevant portion of which is attached hereto as Exhibit "A"). Put simply, if Plaintiff can prove that Electrolizing paid Mr. Bejbl regularly along with its remaining employees, Plaintiff can

---

[1] Section 825.105(e) of the Code of Federal Regulations states:

> The courts have made it clear that the employment relationship under the FLSA is broader than the traditional common law concept of master and servant. The difference between the employment relationship under the FLSA and that under the common law arises from the fact that the term ``employ'' as defined in the Act includes ``to suffer or permit to work''. The courts have indicated that, while ``to permit'' requires a more positive action than ``to suffer,'' both terms imply much less positive action than required by the common law. Mere knowledge by an employer of work done for the employer by another is sufficient to create the employment relationship under the Act. The courts have said that there is no definition that solves all problems as to the limitations of the employer-employee relationship under the Act; and that determination of the relation cannot be based on ``isolated factors'' or upon a single characteristic or ``technical concepts'', but depends ``upon the circumstances of the whole activity'' including the underlying ``economic reality.'' In general an employee, as distinguished from an independent contractor who is engaged in a business of his/her own, is one who ``follows the usual path of an employee'' and is dependent on the business which he/she serves.

29 C.F.R. § 825.105(e)(2007).

establish that Mr. Bejbl "follows the usual path of an employee," likely ending this debate and narrowing the issues for trial.

Unfortunately, the Check Registers, which were produced by an Illinois payroll service company named Paylocity f/k/a Ameripay Payroll, omit Mr. Bejbl's name entirely, allowing Defendants the wiggle room to argue that Mr. Bejbl was not on Electrolizing's payroll in 2005 for the purposes of FMLA compliance. Thus, Plaintiff has issued the ADP subpoena, in part, to argue that if Electrolizing treated Mr. Bejbl as an employee in the past when ADP produced the company's payroll, it follows logically that he should be considered an employee in 2005, when Paylocity f/k/a Ameripay Payroll produced the company's payroll. Absent any evidence that Mr. Bejbl's role in the company changed in a material way since the company switched payroll services, Mr. Bejbl status as an "employee" for FMLA purposes would remain the same despite the fact that the method of his compensation may have been altered when the new payroll company took over.

**B. <u>The decision to discontinue issuing Christopher Bejbl a paycheck regularly through the same payroll service as Electrolizing's remaining employees is relevant to whether the Defendant is liable for liquidated damages under the FMLA.</u>**

As stated previously, the Check Registers omit any reference to Christopher Bejbl. One obvious answer to why Electrolizing discontinued issuing Mr. Bejbl a paycheck along with its remaining employees is because doing so would assist the company in avoiding FMLA compliance by reducing its workforce on paper to below the fifty employee threshold. As such, evidence of Electrolizing's past methods of compensating Mr. Bejbl is relevant to whether the company acted in good faith in believing it was not required to comply with the FMLA, a defense it is likely to utilize to argue it is not liable for liquidated damages.[2]

---

[2] Under the FMLA, liquidated damages are presumed. However, the Defendant may escape liability for liquidated damages by proving that its failure to comply with the FMLA was made in good faith. Section 2617(a) of Title 29 of the United States Code states, in pertinent part, that:

> Any employer who violates section 2615 of this title shall be liable to any eligible employee affected--
>
> (A) for damages equal to--
>
> (i) the amount of--
>
> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation . . .
>
> (ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and

## I. PLAINTIFF DID NOT DISCOVER THE FACTS THAT CAUSED HER TO ISSUE THE ADP SUBPOENA UNTIL APRIL 23, 2008 AND, THEREFORE, TO THE EXTENT THAT THE ADP SUBPOENA FALLS OUTSIDE OF THE FACT DISCOVERY DEADLINE, THERE IS GOOD CAUSE IN REQUESTING THE COURT TO EXTEND THE DEADLINE WITHIN WHICH ADP MUST RESPOND TO THE SUBPOENA.

"The court may extend a scheduling order deadline on a showing 'of good cause if the [deadline] cannot reasonably be met despite the diligence of the party seeking the extension.'" *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st 2004) (quoting Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 16(b)).

In the present matter, there exists good cause for the Court to extend the deadline within which ADP must respond to the subpoena at issue. Indeed, Plaintiff issued the ADP subpoena on April 23, 2008 - the same day she discovered that Electrolizing apparently had switched its method of compensating Christopher Bejbl. Moreover, Plaintiff's issuance of the subpoena occurred only nineteen days after Plaintiff discovered the name of the person who handled the company's payroll during

---

> (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii) . . .

29 U.S.C. § 2617(a)(2007).

her employment (Michelle Carroccio). In truth, it was not feasible for Plaintiff to obtain this information any sooner or from any other source.

**CONCLUSION**

For the forgoing reasons, Ms. Bonilla requests this Honorable Court to deny Defendants Electrolizing, Inc.'s, Alan Godin's, and Dave Richards's Emergency Motion to Quash Plaintiff's Subpoena to ADP, Inc. dated April 23, 2008.

Enid Bonilla
By Her Attorneys,

/s/Mark P. Gagliardi (#6819)
111 Wayland Avenue
Providence, RI 02906
(401) 277-2030
(401) 277-2021 (fax)
e-mail: mark@gagliardilaw.net

/s/Brandon S. Bell (#5871)
120 Wayland Avenue
Providence, RI 02906
(401) 272-6303
(401) 277-4163 (fax)
e-mail: bbellesq@aol.com

## REQUEST FOR ORAL ARGUMENT

Plaintiff hereby requests an oral argument on the above matter.

/s/Mark P. Gagliardi

## CERTIFICATION

I hereby certify that on this **12th** day of **May**, 20**08**, I filed electronically this Memorandum with the Clerk of the U.S. District Court for the District of Rhode Island. The following counsels of record have received notice electronically:

Geoffrey W. Millsom, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
gmillsom@apslaw.com

Adam M. Ramos, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
aramos@apslaw.com

Richard R. Beretta, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
rberetta@apslaw.com

/s/Mark P. Gagliardi

# Exhibit "A"

A. 95 percent.
Q. Do you spend, how do you spend your day? Run me through a typical day of what you do. If you weren't here today, what would you be doing?
A. Well, it's a combination of things. There is no set schedule that I follow. It's just a combination of dealing with customers via phone, via e-mail, faxes, attending various production meetings, facilities maintenance meetings, and discussions with other sales types. In other words, they're dealing with a percentage of customers. As they have a new customer, a new question, we discuss it before they give them a price or something, we discuss that.
Q. Do you spend most of your time in your office?
A. Yes.
Q. When you say you have these production meetings, where do you have them?
A. In a room like this.
Q. Conference room?
A. Conference room, yes.
Q. How much time do you spend on the floor with the other workers, interacting with the other workers?
A. I don't know. It's minimal.
Q. Now, Chris, how do you pay yourself? Do you pay yourself by salary?

A. Yes.
Q. How often?
A. Biweekly.
Q. Okay. Do you use the same payroll company; is it through the same payroll company that everybody else gets paid through?
THE WITNESS: Who is everybody else?
MR. GAGLIARDI: All the other employees.
THE WITNESS: Where, Electrolizing?
MR. GAGLIARDI: Yes.
A. Yes. It goes through the same payroll service, yes.
Q. Who do you use?
A. I believe -- I don't know. Ameripay, I believe.
Q. Did they change their name? Paylocity sound familiar?
A. Possibly.
Q. How often -- have you been paying yourself a salary since you started there in '97?
A. Yes.
Q. How many people work at Electrolizing right now?
A. I don't know.
Q. Is it more than 50 or less than 50?
A. I don't know.