**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ENID BONILLA,<br>Plaintiff<br><br>v.<br><br>ELECTROLIZING, INC.,<br>ALAN GODIN, *alias*,<br>DAVE RICHARDS, *alias*, and<br>any and all defendants,<br>Defendants | : | C.A. No. 07-331S |

**MEMORANDUM IS SUPPORT OF PLAINTIFF'S APPEAL OF THE COURT'S MAY 2, 2008 ORDER DENIYING, IN PART, PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Plaintiff Enid Bonilla hereby moves this Honorable Court to reverse the Court's May 2, 2008 order denying, in part, Plaintiff's Motion to Amend Complaint.

For the reasons state herein, the Court erred in denying Plaintiff's Motion for Leave to Amend.

**FACTUAL BACKGROUND**

Plaintiff Enid Bonilla was employed by Defendant Electrolizing, Inc. ("Electrolizing") from on or about March 30, 2004 (Compl. at ¶ 8) to February 10, 2006, the date of her termination. (*Id.* at ¶ 24).

During the course of Ms. Bonilla's employment, an Electrolizing employee named Alan Godin subjected her repeatedly to a hostile work environment on the basis of her sex (female), her race and color (Hispanic), and her ancestral origin (Puerto Rican). (*Id.* at ¶ 10). Ms. Bonilla complained about this unlawful conduct to Defendant Dave Richards, the company Plant Manager, on many occasions, but Mr. Richards either ignored or dismissed each of Ms. Bonilla's complaints. (*Id.* at ¶ 16-17).

On February 8, 2006, Ms. Bonilla requested and received permission from Mr. Richards to leave work early to take her seriously ill children to the hospital emergency room. (*Id.* at ¶ 21-22). Two days later, Mr. Richards terminated Ms. Bonilla's employment and told her, "I'm letting you go . . . so you can go home and take care of your kids." (*Id.* at ¶ 24).

On August 31, 2007, Ms. Bonilla filed this lawsuit alleging: (1) discrimination and retaliation in violation of Title VII[1] and (2) violation of the FMLA.

On March 21, 2008, Plaintiff filed a Motion for Leave to Amend Complaint ("Motion for Leave" or "Motion") for the purposes of: (1) adding a claim for violation of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 *et. seq.* ("FEPA"); (2) The Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"); (3) recharacterizing her FMLA claim as a retaliation claim; and (4) reclassifying Defendant Alan Godin as Plaintiff's supervisor rather than Plaintiff's co-worker.

On April 28, 2008, a hearing was held before the Honorable Magistrate Judge Martin on Plaintiff's Motion for Leave (the "April 28, 2008 Hearing").

On May 2, 2008, the Court issued a Memorandum and Order Denying Plaintiff's Motion for Leave to add the FEPA and Section 1981 claims (the "May 2, 2008 Order").

---

[1] Ms. Bonilla has complied timely with regards to all administrative procedures and jurisdictional requirements in the matter. On December 6, 2006, Ms. Bonilla filed a Charge of Discrimination against the Defendants in the Rhode Island Commission for Human Rights ("RICHR") (RICHR NO. 07 EAO 131-06/06), which was filed simultaneously in the United States Equal Employment Opportunity Commission ("EEOC") (EECO NO. 16J-2007-00093). (Compl. at ¶ 25). On June 6, 2007, EEOC issued Ms. Bonilla a Right to Sue Letter. (*Id.* at ¶ 27). On June 11, 2007, RICHR issued Ms. Bonilla a Right to Sue Letter. On August 31, 2007, Ms. Bonilla filed suit in this court within ninety (90) days of her receipt of Right to Sue Letters from EEOC and RICHR.

On May 16, 2008, Plaintiff filed timely this instant appeal.

**ARGUMENT**

## I. STANDARD OF LAW

A magistrate judge's factual findings are reviewed under the "clearly erroneous" standard. *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). The court must accept both the magistrate judge's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, the court "form[s] a strong, unyielding belief that a mistake has been made." *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (quoting *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir. 1990)).

## II. ISSUES PRESENTED

**A. WHETHER THE COURT ERRED IN RULING THAT PLAINTIFF'S MOTION FOR LEAVE WAS UNTIMELY.**

**B. WHETHER THE COURT ERRED IN RULING THAT PLAINTIFF DID NOT PROVIDE A VALID REASON FOR THE DELAY IN MOVING THE COURT FOR LEAVE TO AMEND HER COMPLAINT.**

**C. WHETHER THE COURT ERRED IN RULING THAT AN AMENDMENT TO ADD A FEPA CLAIM AND A SECTION 1981 CLAIM WOULD RESULT IN UNDUE PREJUDICE TO THE DEFENDANTS.**

## II. DISCUSSION

For the reasons state below, the Court erred in denying Plaintiff's Motion for Leave to add a FEPA claim and a Section 1981 claim. First, an amendment to add a FEPA Claim and a Section 1981 claim would not have caused a further delay in these proceedings. Second, when examining the totality of the circumstances in this matter, Plaintiff has met her burden of showing a valid reason for a delay in bringing the Motion for Leave. Third, the Defendants have not met their burden in proving that they would be unduly prejudiced by an amendment to add a FEPA claim and a Section 1981 Claim.

### A. AN AMENDMENT TO ADD A FEPA CLAIM AND A SECTION 1981 CLAIM WOULD NOT HAVE CAUSED A FURTHER DELAY IN THESE PROCEEDINGS.

The gravamen of the Court's memorandum denying Plaintiff's Leave to Amend seems to be the alleged untimeliness of her motion. However, there is nothing on the record that supports the position that an amendment to add a FEPA claim or a Section 1981 would delay these proceedings further as required by *Acosta*.[2] In *Harvey v. Snow*, 281 F.Supp.2d 376 (D.R.I. 2003), this Honorable Court articulated the holding of *Acosta*:

---

[2] In the present matter, the Court concluded that the amendments would expand the scope of the litigation to matters outside of the 300 day statute of limitations under Title VII and subject the defendant to potential additional monetary damages, (May 2, 2008 Order Granting in Part Motion to Extend Discovery Deadline and Other Dates at 8), but the Court did articulate any

> The First Circuit emphasized in *Acosta*, that 'undue delay in seeking the amendment may be a sufficient basis for denying leave to amend' when granting the motion to amend will further delay the proceedings. (emphasis added).

*Id.* at 380 (citing *Acosta-Mester v. Hilton Int'l of Puerto Rico*, 156 F.3d 49, 52 (1st Cir. 1998)).

Thus, it is clear from *Acosta and Harvey* that a further delay in the proceedings must be a factor for the Court's consideration before it can deny an amendment due to untimeliness. Indeed, in the May 2, 2008 Order, the Court extended the fact discovery deadline (and the summary judgment deadline) an additional thirty days for the limited purpose of allowing Plaintiff to depose Defendant Dave Richards. (May 2, 2008 Order Granting in Part Motion to Extend Discovery Deadline and Other Dates at 2). Thus, if the Court's allowance of Mr. Richards's deposition would not cause a further delay in the proceedings, then it follows logically that extending the fact discovery deadline for the Defendants to conduct limited discovery to defend these new claims, if necessary, would not cause a further delay in the proceedings either. Indeed, Plaintiff's counsel has offered to make Plaintiff available to the Defendants at their convenience and was even willing to bear a portion of the cost of the deposition.

---

reason why the proceedings would have been delayed had Plaintiff's motion been granted on May 2, 2008.

**1. An Amendment Would Not Result in Further Discovery.**

In their Memorandum in Opposition to Plaintiff's Motion for Leave to Amend Complaint, Defendants made a blanket assertion that they would be required to conduct further discovery because of the additional claims. (Defendants' Opposition to Motion for Leave to Amend Complaint at 6), which the court accepted (May 2, 2008 Order Granting in Part Motion to Extend Discovery Deadline and Other Dates at 7). However, the Defendants have failed to articulate any basis for what type of additional discovery was necessary and why it would have caused a delay in the proceedings. Moreover, the Court did not probe this area in any way at oral argument. Nonetheless, regardless of whether the statute of limitations is 300 days, one year, or three years, the question of when Defendants' unlawful conduct first commenced would remain the only relevant inquiry. Similarly, regardless of whether the there is a cap on statutory and punitive damages, the question of how Plaintiff's termination has adversely affected her life and whether she has sought medical treatment for her alleged injuries would remain the only relevant inquiry. Therefore, the Defendants' contention that they would be subject to additional discovery is unsupportable by any evidence on the record other than their bald assertion.

Moreover, Plaintiff filed her Motion for Leave on March 21, 2008, forty (40) days prior to the fact discovery deadline. As such, Defendants had ample opportunity to conduct whatever additional discovery they deemed necessary.

**B. WHEN EXAMINING THE TOTALITY OF THE CIRCUMSTANCES IN THIS MATTER, PLAINTIFF HAS MET HER BURDEN OF SHOWING A VALID REASON FOR A DELAY IN BRINGING THE MOTION FOR LEAVE.**

In the May 2, 2008 Order, the Court stated that Plaintiff did not provide a satisfactory reason for delay in bringing the amended complaint (May 2, 2008 Order Granting in Part Motion to Extend Discovery Deadline and Other Dates at 7-8). "Although Rule 15(a) of the Federal Rules of Civil Procedure does not prescribe a particular time limit for a motion to amend, it is well-established that such a motion 'should be made as soon as the necessity for altering the pleading becomes apparent.' *Human Resource Development Press, Inc. v. IKON Office Solutions Inc.*, 246 F.R.D. 82, 86 (D. Mass. 2007) (quoting 6A Charles Alan Wright, *et al.*, FEDERAL PRACTICE & PROCEDURE § 1488 (2003)).

In the present matter, Plaintiff filed her Motion as soon as it became apparent to her that allegations were supported by overwhelming evidence and, thus, her lawsuit had substantial value in excess of the $50,000 cap figure. It also is important to note that the proceedings in this case were delayed, in part,

because the Settlement Conference, originally held on December 11, 2007, was continued to April 8, 2008 as the parties were too far apart to engage in meaningful settlement discussions at the time. Put simply, neither party was at fault for the continuance of the Settlement Conference. Rather, the purpose of continuing the Settlement Conference was so that the parties could develop their respective cases and then reconvene on April 8, 2008 for settlement discussions. This was the game plan suggested by Magistrate Judge Lovegreen, and it was embraced by both parties. And while it would have been more prudent for Plaintiff to file her Motion earlier in the proceedings, Plaintiff saw no need to burden the court and opposing counsel with an unnecessary filing. Rather, Plaintiff immersed herself in discovery with an eye towards settlement on April 8, 2008, relying in good faith on the liberal purpose behind Rule 15.

On March 14, 2008, Defendants deposed Plaintiff. Following Plaintiff's deposition, discussions ensued between counsel regarding the value of the case, potential for settlement, and a potential cap on damages.[3] Unfortunately, after four months of

[3] Plaintiff has relied on Defendants' representation that the $50,000 cap on damages applies to Plaintiff's Title VII claim. However, this is not a cut and dry issue because Plaintiff has little information on Electrolizing's parent company. Indeed, the relevant inquiry for the purpose of determining Title VII cap damages is the number of employees employed by the "Respondents" as defined by 42 U.S.C. § 1981a, which currently includes only Electrolizing, Inc. since it is the only named defendant in this matter.

discovery, the parties were no closer in settling this matter. It was at this point that Plaintiff realized that her case is headed for a trial and that she should act promptly by filing her Motion to add the additional claims. Only one week later, on March 21, 2008, Plaintiff filed her Motion.

## C. THE DEFENDANTS HAVE NOT MET THEIR BURDEN IN PROVING THAT THEY WOULD BE UNDULY PREJUDICED BY AN AMENDMENT TO ADD A FEPA CLAIM AND A SECTION 1981 CLAIM.

### 1. Mere Exposure to Additional Monetary Damages With Nothing More Cannot and Does not Rise to the Level of Undue Prejudice.

The Defendants' chief argument for why they would be prejudiced by the addition of a FEPA claim appears to be because it would expose them to additional monetary exposure. (R. at 13). However, without more, mere exposure to additional monetary damages cannot and does not rise to the level of undue prejudice.[4]

---

Therefore, based on the currently named defendants, it appears that a $50,000 cap on compensatory and punitive damages applies since Electrolizing employs fewer than 100 workers. However, on April 4, 2008, at Christopher Bejbl's deposition, Plaintiff discovered that *The Armoloy Corporation* ("Armoloy"), an llinois corporation, may be Electrolizing's parent company and, therefore, Plaintiff is contemplating filing a Second Motion for Leave to Amend to add Armoloy as a defendant. The addition of Armoloy as a defendant may catapult the number of employees for the purpose of determining Title VII cap damages to over 101, thus increasing the cap from $50,000 to at least $100,000.

[4] *Pesce v. General Motors Corp.*, 939 F.Supp. 160, 166 (N.D.N.Y. 1996) ("Purely monetary increase of exemplary, or punitive damages, is not in itself considered prejudicial to the nonmoving party." *Loomis v. Civetta Corinno Constr. Corp.*, 429 N.E.2d 90 (1981)); Zieziula v. Loblaws, Inc., 91 A.D.2d 1198, 1199, 459 N.Y.S.2d 336 (4th Dep't 1983) ("Prejudice, of course, is not found in the mere exposure of the defendant to greater liability. Instead there must be some indication that the defendant has been hindered in

The Defendants have not proven that their ability to defend the FEPA claim and Section 1981 claim would be have been hindered in any way due to the timing of the amendment. Rather, Defendants argument seems to imply that would have defended this lawsuit more vigorously if more money was at stake, which, if true, is simply a poor strategy. As stated previously, Defendants have been aware of a potential FEPA claim since June 29, 2006 and they should have known an amendment to include this claim was a possibility.

**2. When Plaintiff filed suit, the Defendants were put on notice of all foreseeable discrimination claims and were given notice of all statutes of limitations.**

Opposing counsel has argued that for the purposes of establishing a defense strategy, his law firm's practice is to treat claims with potentially unlimited damages differently from claims with a cap on damages (R. at 13), which begs the question: How could opposing counsel have known that Plaintiff would not have moved sooner in amending her complaint? It is inconceivable that a large, well-established, and well-respected law firm, with virtually unlimited resources, would actually utilize a strategy of this nature. Indeed, any defense strategy predicated solely on the statutes cited in the original

---

the preparation of [its] case or has been prevented from taking some measure in support of his position." Loomis, 54 N.Y.2d at 23, 444 N.Y.S.2d 571, 429 N.E.2d 90).

complaint is invincibly flawed and could leave the Defendant flat-footed should the Plaintiff succeed in amending her complaint later in the proceedings. It would seem the more prudent approach would be to assess the allegations in the complaint and prepare for all foreseeable claims, which in this case, include claims under state and federal discrimination statutes. Moreover, once a lawsuit is commenced the Defendants are put on notice of all statutes of limitations, not just the ones cited in the complaint.[5] Put simply, if Defendants believed Plaintiff's claim had a maximum value of $50,000 because it was originated as a Title VII claim and defended her claims with an amount of vigor commensurate with that value, then they bore the risk associated with such a short-sighted defense strategy.

Furthermore, after Plaintiff filed her Motion for Leave on March 21, 2008, Defendants had ample opportunity to reassess their position and alter their defense strategy as there was still forty days remaining on the fact discovery deadline. Moreover, at this point, the Settlement Conference was

---

[5] The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149n.3 (1984) (citing 3 J. Moore, Moore's Federal Practice ¶ 15.15[3], p. 15-194 (1984)). Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

approximately three weeks away and, therefore, Defendants had the opportunity to reassess the value of Plaintiff's claim, taking into account the potential unlimited liability of a FEPA claim. However, in the end, the Defendants never made any meaningful settlement offers, despite the fact that a potential FEPA claim was looming on the horizon. Instead, Defendants chose to stay the course and continue with its strategy of offering to settle for Plaintiff's back pay.

### 3. **Defendants admitted at oral argument that they would not be prejudiced by the addition of a Section 1981 Claim.**

At oral argument, opposing counsel admitted that Plaintiff's Section 1981 claim would not cause the Defendants to suffer any prejudice (R. at 13), referring to this claim as "repetitive and unnecessary." As such, it is clear, once again, the Defendants' claim of prejudice is based entirely on their potential exposure to additional money damages. Because of the Defendants' admission of a lack of prejudice, the Court, at a minimum, should have granted an amendment to include this claim.

**CONCLUSION**

For the forgoing reasons, Ms. Bonilla requests this Honorable Court to reverse its May 2, 2008 order denying, in part, Plaintiff's Motion to Amend Complaint and to enter an order granting Plaintiff's Motion to Amend Complaint to add a FEPA claim and a Section 1981 claim.

Enid Bonilla
By Her Attorneys,

/s/Mark P. Gagliardi (#6819)
111 Wayland Avenue
Providence, RI 02906
(401) 277-2030
(401) 277-2021 (fax)
e-mail: mark@gagliardilaw.net

/s/Brandon S. Bell (#5871)
120 Wayland Avenue
Providence, RI 02906
(401) 272-6303
(401) 277-4163 (fax)
e-mail: bbellesq@aol.com

**CERTIFICATION**

I hereby certify that on this **16th** day of **May**, 20**08**, I filed electronically this Memorandum with the Clerk of the U.S. District Court for the District of Rhode Island. The following counsels of record have received notice electronically:

Geoffrey W. Millsom, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
gmillsom@apslaw.com

Adam M. Ramos, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
aramos@apslaw.com

Richard R. Beretta, Esq.
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
rberetta@apslaw.com

/s/Mark P. Gagliardi