**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ENID BONILLA,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLIZING, INC., ALAN GODIN and DAVE RICHARDS,<br><br>Defendants. | : | C.A. No. 07-331S |

**OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO**
**<u>COMPEL TELEPHONIC DEPOSITION OF DEFENDANT DAVE RICHARDS</u>**

Defendants Electrolizing, Inc., Alan Godin and Dave Richards ("Defendants") hereby submit this Opposition to Plaintiff's Emergency Motion to Compel Telephonic Deposition of Defendant Dave Richards.

## INTRODUCTION

Despite having been aware that Mr. Richards resides in North Carolina for more than two months, and despite the passage of three weeks since the Court extended the discovery period for a month in order to allow for the deposition of Mr. Richards, Plaintiff now moves on an emergency basis for an order compelling a telephonic deposition. Her request for expedited treatment purports to require the Defendants and the Court to scramble to respond and address this motion on an expedited basis. Such scrambling, however, is inappropriate in light of the many procedural and substantive deficiencies in the motion. Stated otherwise, there is no need to drop everything merely because Plaintiff characterizes her present situation as an emergency when the "emergency" is largely of her own creation and she is either unable or unwilling to help

herself by properly invoking either the Federal Rules of Civil Procedure or substantive law in support of her request.

In fact, Plaintiff's purported motion is not something that can even be ruled on by the Court because it seeks an advisory opinion and is fundamentally procedurally flawed. For starters, Plaintiff brings her motion under a federal rule of civil procedure that no longer exists (Rule 30(b)(7)), rather than the post-amendment counterpart of the rule she intended to invoke (Rule 30(b)(4)). Furthermore, even the rule she intended to invoke does not countenance motions to compel, which are governed by Rule 37. Also, a motion to compel is not the appropriate procedural mechanism; she should have moved for leave to take a telephone deposition. Finally, and most importantly, Plaintiff has not even noticed the deposition of Mr. Richards (and Mr. Richards has not objected to or failed to appear for his deposition), which renders Plaintiff's motion a pointless attempt to obtain this Court's ruling on an issue that has not ripened into a justiciable controversy.

Even if the Court were inclined to render an advisory opinion on the issue of whether Mr. Richards may be deposed telephonically, it should find that a telephonic deposition is inappropriate and unwarranted in this case. Plaintiff has not carried her burden of proving that a telephonic deposition should be permitted. Indeed, Plaintiff has not even correctly identified the appropriate burden of proof on the motion and erroneously suggests that the burden is entirely upon Defendants to demonstrate why a telephonic deposition is unwarranted. Her own authority – Moore's Federal Practice – indicates the exact opposite, i.e. it states that Plaintiff bears the initial burden of persuasion.

Plaintiff, however, cannot carry her burden of showing a legitimate reason why Mr. Richards should be deposed over the telephone for several reasons. First, Mr. Richards is a party

to this litigation and is subject to financial liability in the event that Plaintiff prevails. Obviously, this makes his testimony and deposition far more important than that of a non-party witness. Second, Mr. Richards, is substantively one of the two most important witnesses in this case. He is the individual to whom Plaintiff alleges she complained about discriminatory comments in the workplace and the one who fired Plaintiff for reasons that she claims violate federal law. His testimony could not be more important to the resolution of this dispute. Third, Plaintiff's previous depositions reveal a propensity to muddle and confuse the record, the witness and opposing counsel that creates a very real threat that a telephonic deposition will exacerbate the possibility of ambiguity, confusion, prejudice and a lack of reliability and trustworthiness in the transcript. The First Circuit has recognized that telephonic depositions inherently present problems that the circumstances of this case suggest should not be ignored.

The lone reason advanced by Plaintiff in support of her request – financial hardship – is neither compelling, nor accurate upon inspection. Plaintiff initiated this case and it is both fair and fitting that she should bear some costs associated with pursuing it. Defendants have certainly been forced to incur fees and costs in this litigation although they believe (and they may be correct) that Plaintiff's claims are meritless. In a few minutes of internet research, Defendants were able to determine that Plaintiff's travel costs and expenses for a deposition in North Carolina will be approximately $1,000 if her counsel elects to spend two nights in hotels. This approximate expense is hardly a hardship and, in light of the fact that defense counsel will travel to North Carolina regardless of the manner by which the deposition is conducted, it is certainly not unfair that Plaintiff should incur this modest expense.

## FACTUAL BACKGROUND

This case originally was filed on August 31, 2007. (Plaintiff's Complaint (Doc. # 1)). Defendants' initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure were provided on November 13, 2007. In that disclosure, Defendants indicated that Mr. Richards could be contacted through legal counsel. At that time, Mr. Richards resided in Rhode Island. He subsequently moved to North Carolina. Plaintiff admits that she knew that Mr. Richards' had moved to North Carolina as of March 14, 2008. That admission means that Plaintiff waited for seventy days from the time she learned Mr. Richards' location – and three weeks from the time this Court extended discovery explicitly to allow for the taking of Mr. Richards' deposition – before making the motion to compel. In fact, Plaintiff first indicated that she was considering seeking to conduct the deposition by telephone on May 14, 2003, and Defendants immediately responded that they would not consent. *See* May 14, 2008 e-mail, attached as Exhibit A. Nevertheless, Plaintiff waited another nine days before filing a motion to compel the deposition.[1] Now this unexplained and unnecessary delay has resulted in this "emergency" motion that purports to require that both this Court and Defendants address it in an abbreviated time frame.

## ARGUMENT

### I. PLAINTIFF'S REQUEST IMPROPERLY SEEKS AN ADVISORY OPINION AND LACKS AN APPROPRIATE PROCEDURAL BASIS

Plaintiff moves pursuant to Rule 30(b)(7) to "compel the telephonic deposition of Defendant Dave Richards on or before May 31, 2008." Under the 2008 version of the Federal

[1] Plaintiff styles this motion an "emergency" motion. However, this motion does not appropriately invoke the need for emergency relief. Plaintiff admits in her motion that she was aware of Mr. Richards' out-of-state location as of March 14, 2008 – 70 days before she brought this motion seeking "emergency" relief. This Court's order extending the time by which Plaintiff could take Mr. Richards' deposition to May 31, 2008 was entered on May 2, 2008 – three weeks before she sought emergency relief. Moreover, while Plaintiff did ask whether Defendants consented to a telephonic deposition of Mr. Richards, she did not inquire as to whether Defendants would consent to having that deposition taken after May 31, 2008 in the event Plaintiff was successful in her motion. All these factors demonstrate the fact that this is not truly an emergency motion.

Rules of Civil Procedure, however, there is no Rule 30(b)(7). Presumably, Plaintiff intends to move under current Rule 30(b)(4), which governs when depositions may be taken "by telephone or other remote means." Fed R. Civ. P. 30(b)(4). However, even if Plaintiff is given the benefit of the doubt for her lack of familiarity with the rules of civil procedure, her motion remains procedurally infirm.

Neither old rule 30(b)(7) nor current Rule 30(b)(4) countenance a motion to compel. Motions to compel are governed and authorized by Rule 37(a) of the Federal Rules of Civil Procedure. Rule 37(a)(3)(B)(i) permits a motion compelling discovery if "a deponent fails to answer a question asked under Rule 30 or 31." A failure to appear for a properly noticed deposition also may be the subject of a motion to compel. *See Spiller v. U.S.V. Laboratories, Inc.*, 842 F.2d 535, 536 (1st Cir. 1988) (noting that the District Court granted a motion to compel after the plaintiff failed to appear for his deposition). Rule 37(a)(1) also imposes the requirement that the moving party in a motion to compel must accompany the motion with a certification that she made a good faith effort to resolve the dispute without resort to the courts.

Plaintiff, however, has not even noticed the deposition of Defendant Richards, to be conducted by telephone or otherwise. Rule 30(b)(1) imposes the requirement on the party taking the deposition to "give reasonable written notice" that "must state the time and place of the deposition." In light of the fact that the deposition has not even been noticed, Mr. Richards obviously could not have failed to appear for his deposition.[2] Moreover, Plaintiff's purported motion to compel is not accompanied by the necessary certification of a good faith attempt to resolve this matter without resort to the courts. The absence of a notice of deposition, followed by the lack of a failure to appear for the (unnoticed) deposition, coupled with the absence of the

[2] Informal e-mail correspondence has taken place between counsel for Plaintiff and Defendants discussing whether and how Mr. Richards' deposition will be taken. In that correspondence, Defendants have indicated that they will not agree to the taking of the deposition by telephone. *See* Exhibit A.

required Rule 37 certification renders this purported motion to compel both premature and procedurally flawed.

Ultimately, Plaintiff lacks standing at this point to move to compel the (unnoticed) telephonic deposition of Mr. Richards because there is no present controversy. Bringing a motion to compel under these circumstances is the equivalent of asking this court to issue an advisory opinion as to Plaintiff's ability to compel this deposition in the event she ever notices it in accordance with Rule 30(b)(1). In the absence of an actual controversy, a court has no jurisdiction to issue an opinion. *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir.1995). A case that is not ripe does not present an adjudicable controversy. *Pascoag Reservoir & Dam, LLC v. Rhode Island*, 217 F. Supp.2d 206, 215 (D.R.I. 2002). "If the dispute is not ripe, then the Court would be engaged in abstract disagreements over matters that "'may not occur as anticipated or may not occur at all.'" *Id.* (citing *Faerber v. City of Newport*, 51 F.Supp.2d 115, 124 (D.R.I.1999) (quoting *Riva v. Massachusetts*, 61 F.3d 1003, 1009 (1st Cir.1995))).

## II. PLAINTIFF'S ARGUMENTS IN SUPPORT OF A TELEPHONIC DEPOSITION MISSTATE THE LAW AND FAIL ON THEIR MERITS

Even if this Court was inclined to entertain Plaintiff's inappropriate request for an advisory opinion, it should not order a telephonic deposition of Dave Richards because the reasons set forth by Plaintiff regarding why a telephonic deposition should be permitted in this instance are inadequate.

### A. Plaintiff Has The Burden Of Persuading The Court That A Telephonic Deposition Is Warranted

Plaintiff erroneously suggests that Defendants have the burden of persuasion on the issue of the appropriateness of a telephonic deposition. In support of this position, Plaintiff cites

Moore's Federal Practice § 30.24 (3d ed. 1999). Curiously, Plaintiff quotes from a section of the treatise that addresses the standard and burdens of proof applicable to situations in which the deponent seeks to be deposed telephonically and one of the parties to the litigation does not consent. That is not the case here. In this case, the witness consents to have his testimony taken live in the traditional manner.

Where it is the party – not the witness – who seeks to conduct the deposition by telephone, Moore's Federal Practice makes clear that it is the party seeking the deposition who bears the initial burden of persuasion:

> A party seeking to depose a witness by telephone must present a legitimate reason for the request. The burden then shifts to the opponent to show why the deposition should not proceed by a more traditional method. The court must then determine whether the use of telephonic means would reasonably ensure accuracy and trustworthiness, and whether the opposing party would be prejudiced.

7-30 Moore's Federal Practice-Civil § 30.24. Not unexpectedly, this burden appears to be heightened when the witness in question is a party witness, rather than a non-party. *Id.*; *United States v. Rock Springs Vista Dev.*, 185 F.R.D. 603, 604 (D. Nev. 1999) ("The issue of taking the deposition of a witness is different from the issue of taking the deposition of a plaintiff. A witness is not responsible for and has not made the election to be involved in the litigation.").

Here, the Plaintiff seeks to depose an individual she has sued and from whom she seeks to recover damages. She bears the burden of showing why she should not be required to depose him in person.

**B. There Are Compelling Reasons Why Dave Richards Should Not Be Deposed Telephonically**

There is ample reason to be concerned that a telephonic deposition would be problematic, prejudicial and inappropriate in this instance.[3] First, Mr. Richards is a named defendant in this case and one of the two most important witnesses. He is Plaintiff's supervisor, the one to whom she claims to have complained regarding discrimination and the one who is alleged to have fired her in violation of federal law. But for the myriad legal problems with Plaintiff's claims that can – and hopefully will – be resolved on summary judgment, this boils down to a "he-said, she said" case and Mr. Richards is the "he." As such, Mr. Richards' testimony is crucial and, in light of the fact that he is subject to the possibility of personal liability in the event Plaintiff obtains a judgment in this case, his deposition should be afforded all the protections and assurances of accuracy and trustworthiness that are within the Court's power to provide. Obviously an in-person, non-telephonic deposition provides such assurances. A telephonic deposition is dependent on technology, raises issues with respect to the clarity of the transcript, increases the possibility of confusion, does not allow for face-to–face discourse and is inherently inferior to and less trustworthy than a live deposition.

Second, the depositions that Plaintiff has taken in this case reveal an unusually high likelihood of confusion and lack of clarity in the deposition, even when taken in person, and the addition of a telephonic intermediary can only serve to make matters more muddled and less clear. The following is a except from the transcript of the deposition of Defendant Alan Godin

[3] Plaintiff, in her Memorandum In Support Of Plaintiff's Emergency Motion To Compel Telephonic Deposition Of Defendant Dave Richards (Doc. # 46), inaccurately states that "The Defendants have not proffered any reason why they oppose a telephonic deposition[.]" Doc. # 46 at 5. She then goes on to conclude from that faulty assumption that Defendants have no basis for opposing the telephone deposition. These statements are not entirely accurate. In informal e-mail discussions regarding a telephonic deposition of Mr. Richards, Defendants made clear the nature of their concerns. *See* March 14, 2008 e-mail, attached as Exhibit A. ( "Since he is a party and, arguably the most important witness in the case other than your client, we will not consent to a telephone or video-conference deposition.").

regarding Electrolizing, Inc.'s policy regarding personal days – a policy that is clearly set out in the company manual that was produced to Plaintiff in advance of the deposition and in the physical possession of Plaintiff's counsel at the deposition:

Q: What about vacation, do you get paid vacation?

A: Four weeks.

Q: Four weeks, okay. What about sick days and personal days?

A: No.

Q: None?

A: No.

Q: What happens if you're sick, what do you do?

A: Either use a vacation day, or you just lose it.

Q: What about a personal day?

A. There is no personal days.

Q. Is it fair to say that the company's policy is to use unused vacation days for these things if you're sick, personal days?

MR. MILLSOM: Objection.

A. Yeah -- yes.

[. . .]

Q: If you wanted to take a sick day tomorrow, I'm trying to understand how this policy works?

A: You're supposed to let them know a couple days ahead if you're going to take a day, but you have to use it out of your vacation.

Q: Sure. What if you wake up in the morning and you're vomiting –

A: Well, you call in sick and they will take it out of your vacation.

Q. Is that something that you could get terminated for?

MR. MILLSOM: Objection. Can you rephrase that question? I don't understand it. I don't think it's understandable.

Q: According to the company policy, is that a violation of the company policy to take a sick day when you have --

THE WITNESS: When you're not sick?

Q: No. When you have available vacation days to take, is that a violation of the company policy to use vacation days for a sick day?

A: On the spur of the moment, like calling in.

Q: Sure. If you woke up really sick in the morning, would you expect to suffer some kind of discipline for doing that?

A: No.

[. . .]

Q: What if you wanted to -- let me just ask about a personal day. Do you have to give a reason?

MR. MILLSOM: Objection.

Q: To the company?

A: I don't know. I never come across that.

Q: If you go back to the office today, and say, Kevin, I want to take a personal day on Friday, would he ask you why you need that day?

A: I don't know.

MR. MILLSOM: Can we go off the record for a second.

(COUNSEL CONFERRING WITH WITNESS)

A: There is actually no personal days. You're referring to using up a vacation day. I don't know.

Q: Do you have to take it for vacation?

MR. MILLSOM: Objection.

Q: I'm just confused as to the company's policy?

A: I'm confused what you're trying to ask me, too.

MR. MILLSOM: So am I, Mark.

Q: Okay. I thought it was a pretty clear question. On Friday, you need to take a personal day and you go back to your office today and ask them to take a personal day. What is the company –

A: I don't say personal day.

MR. MILLSOM: Objection.

Q: What is the company's policy on that? You must know the company's policy, you've been working there 26 years.

MR. MILLSOM: Objection. I think the problem, Mark, is he testified there was no personal days and you keep phrasing your question as though it involves a personal day. This witness can't answer that. You're confusing him, you're confusing me. I don't mean to speak on your record. Perhaps you could rephrase the question by making it consistent with his testimony.

Alan Godin Dep. Tr. 24:6-28:7, attached hereto as Exhibit B. Despite clear testimony from the witness, a clear and unambiguous policy set out in the company manual and facilitation by defense counsel, the foregoing exchange was frustrating, confusing and could have resulted in inaccurate and incorrect testimony from a witness who was simply trying his best to answer Plaintiff's perplexing questions in person – not over a telephone. Based on this and other, similar exchanges between Plaintiff and various witnesses in depositions, Defendants have a very real, well-founded fear that a telephonic deposition of Dave Richards could result in confusion and prejudice of a truly extraordinary nature.

Both the First Circuit and this Court have recognized the inherent problems associated with telephonic depositions. In the criminal context, the First Circuit was faced with a decision of the District Court denying leave to take a telephone deposition of a witness who was unavailable for trial. *U.S. v. Ferrera*, 746 F.2d 908, 912 (1st Cir. 1984). Among other reasons,

the court cited difficulty in questioning the deponent about documents and that the deponent was insulated from his interlocutors as reasons why the telephone deposition was appropriately disallowed. *Id.* at 912-13. The court also found fault with the failure to explain why traditional deposition methods could not be used. *Id.* at 913. In *Marcello v. DeSano*, No. CA 05-004 ML, 2006 WL 1582404, at *11 (D.R.I. March 23, 2006), this Court directed that the Plaintiff appear for his deposition by telephone when he indicated that he would not attend his deposition, but included the caveat that he appear in person if a telephone deposition was not feasible or satisfactory. The deposing party agreed to the telephone deposition, but the plaintiff did not answer his phone at the scheduled time. *Id.* at *12. *See also Smith v. K-Mart Corp.*, 177 F.3d 19, 23 (1st Cir. 1999) (the District Court sanctioned a party for failing to produce a party for deposition despite the fact that he was produced for deposition by telephone).

These cases support Defendants' fear that telephone depositions present special problems of reliability. Like in *Ferrera*, if this deposition was to be conducted telephonically, Mr. Richards would be insulated from the questioner, and any questions that referred to documents would be very difficult, if not impossible. The *Marcello* and *Smith* cases highlight the court's lack of comfort with telephone depositions. Considering also the demonstrated difficulties in previous depositions in this case, Defendants have demonstrated good cause for why this deposition should not be conducted by telephone.

**C. <u>Plaintiff's Plea Of Financial Hardship Is Unpersuasive.</u>**

Plaintiff asserts that it would be too expensive for her to either travel to North Carolina for the deposition or to reimburse Mr. Richards for his travel to Rhode Island for the deposition. This argument misses the mark on multiple levels.

The balance of the equities does not weigh in Plaintiff's favor. In our court system, plaintiffs are permitted to bring suit without fear of being saddled with a penalty for losing, other than the expenses of bringing the suit.[4] In contrast, once a defendant is sued, he is forced, unless he admits liability, to defend his suit at his expense, regardless of how unfounded the charges levied against him. Plaintiff's costs are not so unwieldy as to make her argument against being forced to pay them any more compelling than that of Mr. Richards, who did not volunteer to be a defendant in this suit, yet is faced with the costs of defending it everyday.

More pointedly, however, Plaintiff's plea of poverty rings hollow. A very brief internet search conducted on May 27, 2008 by Defendants revealed flights from Providence to North Carolina, departing May 28, 2008, and returning on May 30, 2008, a hotel room for two nights at the Marriott near the airport, and car rental of a Mazda 6 with GPS that cost a grand total of $1001.20. *See* Printouts of Reservation Details, attached as Exhibit C. This travel itinerary was compiled without looking for a cost-saving package of airfare plus hotel plus rental car, and it did not take any pains to search for the least expensive flight, hotel or rental car. Obviously, Plaintiff's counsel could fly down and back in one day, and thereby save his client more than $350 on hotel bills. For many reasons, it is highly likely that Plaintiff could have made travel arrangements for much less than $1000.

Plaintiff is not faced with the prospect of traveling to some remote part of the world to take this deposition. In fact, she would not even have to travel outside of the time zone within the country. A cost of approximately $1000 is perfectly reasonable for short-notice business travel. Plaintiff's prayer to this Court to be saved from this expensive burden is unconvincing. The cost of travel is part of burden Plaintiff took on when she elected to file suit.

---

[4] As opposed to the rule in England that imposes costs and attorneys' fees on the party that loses at trial.

In fact, Plaintiff's argument of financial hardship only looks at half of the equation. If the deposition goes forward by telephone, Defendants will dispatch counsel to North Carolina to prepare the witness and defend the deposition live and in person (as is indisputably warranted by the significance of Mr. Richards' role in this dispute) and will incur the associated costs and expenses. Plaintiff, on the other hand, will obtain a financial advantage – her counsel will not be required even to leave his office, much less incur costs comparable to the defendants. This is neither fair nor in keeping with the spirit of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons set forth in this memorandum, Defendants Electrolizing, Inc, Alan Godin, and Dave Richards respectfully request that this Court deny Plaintiff's Emergency Motion to Compel Telephonic Deposition of Defendant Dave Richards.

Dated: March 28, 2008
Providence, Rhode Island

ELECTROLIZING, INC., ALAN GODIN
and DAVID RICHARDS,

By their attorneys,

/s/ *Geoffrey W. Millsom*

Richard R. Beretta (#4313)
Geoffrey W. Millsom (#6483)
Adam M. Ramos (#7591)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
(401) 274-7200
Fax: (401) 751-0604/351-4607
gmillsom@apslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the within Opposition to Plaintiff's Emergency Motion to Compel Telephonic Deposition of Defendant Dave Richards through the ECF system on the 28th day of May, 2008, and that notice will be sent electronically to the all counsel who are identified on the Mailing Information for Case No. 07-331S.

*/s/ Geoffrey W. Millsom*

*455652_1.doc*