UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ENID BONILLA
vs. C.A. No. 07-331S
ELECTROLIZING, INC., ALAN GODIN
and DAVID RICHARDS

DEPOSITION OF ALAN GODIN, a Defendant in the above-entitled case, taken on behalf of the Plaintiff, before Linda L. Guglielmo, RPR-RMR, a Notary Public in and for the State of Rhode Island, at the offices of Adler, Pollock & Sheehan, PC, One Citizens Plaza, Providence, Rhode Island on April 1, 2008 at 9:30 A.M.

APPEARANCES:

FOR THE PLAINTIFF.........LAW OFFICE OF MARK GAGLIARDI
BY: MARK P. GAGLIARDI, ESQUIRE

FOR THE DEFENDANTS........ADLER, POLLOCK & SHEEHAN, PC
BY: GEOFFREY W. MILLSOM, ESQ.

ALLIED COURT REPORTERS, INC.
115 PHENIX AVENUE
CRANSTON, RHODE ISLAND 02920
401/946-5500

before her?
A. Norma.
Q. Norma. Do you remember her last name?
A. Gelinas, something like that.
Q. How long did you work with Norma?
A. She was the receiver, she came and worked with me when I needed help. Probably four years.
Q. Why did she leave the company?
A. Retired.
Q. Do you remember how old she was, approximately?
A. 62 when she went out.
Q. Before Norma, do you remember who you worked with?
A. No. They sent people over from time to time when there was a problem getting stuff packaged. It could be anybody in the shop that wasn't doing nothing. Basically, I worked by myself.
Q. During 26 years you worked with Norma and Enid, anybody else?
A. Different people. I couldn't tell you their names.
Q. Did you ever -- have you ever fired anybody that worked with you?
A. I don't fire. No.
Q. Did you ever ask management to fire somebody?
A. No.



Q. Ever recommend that someone be fired?
A. No.
Q. Do you know how many people work at Electrolizing?
A. Not exact count.
Q. Approximately?
A. 30, 35.
Q. Has that number changed over the years, or is that consistent?
A. I don't know.
Q. You don't know. Well, for example, did the company -- were there times where they had a lot of employees and then had to scale back?
A. Basically the same.
Q. It's been 30 to 35 employees for --
A. Basically. 35 is not an exact number.
Q. Sure, I understand. What kind of company benefits do you receive with the company?
A. Nothing.
Q. You've been there 26 years and you don't have any benefits?
A. I have my wife's insurances.
Q. Let me rephrase that. Let me just describe what I mean by a benefit. Other than your salary?
A. 401(k) profit sharing.
Q. 401(k) and profit sharing or 401(k)?



A. It's all together.
Q. How long have you been receiving that?
MR. MILLSOM: Objection.
A. Since they started the program. I can't give you exact time. Over 20 years.
Q. What about vacation, do you get paid vacation?
A. Four weeks.
Q. Four weeks, okay. What about sick days and personal days?
A. No.
Q. None?
A. No.
Q. What happens if you're sick, what do you do?
A. Either use a vacation day, or you just lose it.
Q. What about a personal day?
A. There is no personal days.
Q. Is it fair to say that the company's policy is to use unused vacation days for these things if you're sick, personal days?
MR. MILLSOM: Objection.
A. Yeah -- yes.
Q. Are there any limitations on that, and what I mean by that is you have four weeks' vacation, that's 20 days, correct?



A. Yes.
Q. How many have you used so far?
MR. MILLSOM: Objection.
A. Probably three.
Q. Three. So you have 17 left?
A. Yes.
Q. If you wanted to take a sick day tomorrow, I'm trying to understand how this policy works?
A. You're supposed to let them know a couple days ahead if you're going to take a day, but you have to use it out of your vacation.
Q. Sure. What if you wake up in the morning and you're vomiting --
A. Well, you call in sick and they will take it out of your vacation.
Q. Is that something that you could get terminated for?
MR. MILLSOM: Objection. Can you rephrase that question? I don't understand it. I don't think it's understandable.
Q. According to the company policy, is that a violation of the company policy to take a sick day when you have --
THE WITNESS: When you're not sick?
Q. No. When you have available vacation days to

take, is that a violation of the company policy to use vacation days for a sick day?
A. On the spur of the moment, like calling in.
Q. Sure. If you woke up really sick in the morning, would you expect to suffer some kind of discipline for doing that?
A. No.
Q. Do you know anybody that -- any co-workers that were disciplined for doing that?
A. I don't know what other co-workers do or what they have done.
Q. In your 26 years, have you ever heard of a co-worker who was disciplined for using a vacation day for a sick day?
A. No.
Q. In 26 years, no?
A. No. I haven't heard anything on that topic at all.
Q. What if you wanted to -- let me just ask about a personal day. Do you have to give a reason?
MR. MILLSOM: Objection.
Q. To the company?
A. I don't know. I never come across that.
Q. If you go back to the office today, and say, Kevin, I want to take a personal day on Friday,



would he ask you why you need that day?
A. I don't know.
MR. MILLSOM: Can we go off the record for a second.
(COUNSEL CONFERRING WITH WITNESS)
A. There is actually no personal days. You're referring to using up a vacation day. I don't know.
Q. Do you have to take it for vacation?
MR. MILLSOM: Objection.
Q. I'm just confused as to the company's policy?
A. I'm confused what you're trying to ask me, too.
MR. MILLSOM: So am I, Mark.
Q. Okay. I thought it was a pretty clear question. On Friday, you need to take a personal day and you go back to your office today and ask them to take a personal day. What is the company --
A. I don't say personal day.
MR. MILLSOM: Objection.
Q. What is the company's policy on that? You must know the company's policy, you've been working there 26 years.
MR. MILLSOM: Objection. I think the problem, Mark, is he testified there was no



personal days and you keep phrasing your question as though it involves a personal day. This witness can't answer that. You're confusing him, you're confusing me. I don't mean to speak on your record. Perhaps you could rephrase the question by making it consistent with his testimony.
Q. If you need a day off from work for any reason, what is the company's policy on that?
A. You let them know at least two to three days ahead of time that you want a day off.
Q. Okay. And would you get paid for that day off if you weren't working?
A. Let them know two or three days ahead, yes.
Q. You would get paid?
A. It's a vacation day you're using.
Q. They would apply the vacation day to that?
A. Yes.
Q. Okay. I want to continue talking about the company's benefits, okay. You said there is a 401(k), profit sharing, paid vacations. What about family and medical leave? Does the family offer family medical leave?
A. I have no idea. I never used it. Never had an opportunity to use it. I know nothing about



that.
Q. Have you -- does the company have an employee handbook?
A. I haven't seen one. Regarding the benefits and stuff, no.
Q. How do you know that you have a 401(k) and profit sharing?
A. Well, they hold a meeting once a year, and they explain if you want to belong to it, the new employees can, and they explain to you the process of the 401(k).
Q. Did the company ever give you an employee handbook when they hired you?
A. I don't recall. It's been 26 years, I don't recall if I got anything like that when I started. It might have just been verbal. I don't recall.
MR. GAGLIARDI: I want to enter this as Exhibit A.
(PLAINTIFF'S EXHIBIT A MARKED FOR IDENTIFICATION)
Q. Have you ever seen this document before?
A. Might have got something like this -- we got a stack of papers like this. Let me see, I can't remember -- it was awhile back. I don't think this is -- I don't know. I don't recall. I don't