**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ENID BONILLA,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLIZING, INC., ALAN GODIN and DAVE RICHARDS,<br><br>Defendants. | : | C.A. No. 07-331S |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S APPEAL OF MAGISTRATE JUDGE MARTIN'S ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Pursuant to Rule 72 of the Federal Rules of Civil Procedure and Local Rule (Civ) 72(c)(3) of the Local Rules of the Unites States District Court for the District of Rhode Island, Defendants Electrolizing, Inc., Alan Godin, and Dave Richards submit this response in opposition to Plaintiff Enid Bonilla's appeal of Magistrate Judge Martin's May 2, 2008 Order, in which he denied in part and granted in part Plaintiff's Motion for Leave to Amend Complaint. (Document ("Doc.") # 31).

## INTRODUCTION

In seeking to overturn Magistrate Judge Martin's Order, Plaintiff faces the heavy burden of demonstrating the existence of a clear legal error. Her appeal brief fails, however, even to articulate an error of law in the Order. Instead, Plaintiff attempts to reargue the facts presented to Magistrate Judge Martin and points to several "issues" that she believes should have come out differently. For starters, this approach is fundamentally flawed. A motion for leave to amend a complaint does not present a formulaic analysis of a list of elements and requirements, the

presence or absence of any of which will determine the outcome of the motion. It is a motion and analysis left largely to the Court's broad discretion and even more so on appeal. The First Circuit has made clear that as long as the record arguably supports Magistrate Judge's decision, it must stand. Even if one of the challenged findings of Magistrate Judge Martin was incorrect (*i.e.* the existence of delay, prejudice, lack of good cause for the amendment), it would not constitute legal error sufficient to reverse the decision.

More importantly, the record amply demonstrates the existence of each of the factors that led Magistrate Judge Martin to render his decision – even in consideration of the new facts and arguments that Plaintiff improperly raises for the first time on appeal. In light of the fact that Plaintiff admittedly threatened to bring the putative new claims more than one year in advance of the initial Complaint and more than two years before moving to amend at the close of discovery, Magistrate Judge Martin appropriately found there was no good reason for the amendment. Plaintiff's twin arguments in support of the amendment, consisting of "oops" and "I really think it helps my case," are no more compelling on appeal than they were when made to Magistrate Judge Martin.

Similarly, the determination that an amendment would delay these proceedings was appropriately made. Both the record and binding First Circuit precedent clearly demonstrate that an eleventh hour amendment made contemporaneously with the expiration of the discovery period is untimely and results in delay. This is particularly true where, as here, the amendment would trigger a new statute of limitations that would allow plaintiff to reach back further in time and attempt to recover for injuries sustained as a result of events not at issue in the initial action.

Finally, Magistrate Judge Martin correctly determined that Defendants would be prejudiced if leave to amend were permitted. Although it is patently obvious how a defendant in

a case with a $50,000 damage cap would be adversely impacted by an amendment at the close of discovery that rendered recoverable damages unlimited and invoked a longer statute of limitations, Plaintiff attempts to argue otherwise on the basis of inapposite out-of-state caselaw largely decided under the inapplicable New York CPLR and her own irrelevant opinion regarding appropriate defense strategy. She cannot, however, eliminate the factual support in the record for Magistrate Judge Martin's conclusions.

**TRAVEL OF THE CASE**

Plaintiff filed her Motion for Leave to Amend Complaint on March 21, 2008. (Doc. # 16). In that motion, she sought to add additional discrimination and retaliation claims under the Rhode Island Fair Employment Practices Act ("FEPA"), a claim under § 1981 of the Civil Rights Act of 2001 (42 U.S.C. § 1981), to change the nature of her claim under the Family and Medical Leave Act ("FMLA") (29 U.S.C. § 2601 *et. seq.*), and to re-characterize Defendant Alan Godin as a supervisor rather than a co-worker. *Id.* In that motion, she argued that she should be permitted to add the FEPA and § 1981 claims because FEPA does not contain a damages cap,[1] and because § 1981 has a three-year statute of limitations. (Doc. # 16-3 at 3-5).

In opposition, Defendants directed the Court's attention to the fact that, while Rule 15 describes a liberal standard with regard to granting leave to amend pleadings, it does impose a burden on the moving party to show that "justice" dictates that the court allow the amendment. (Defendants' Opposition to Motion for Leave to Amend Complaint, Doc. # 20, at 3) (citing Fed. R. Civ. P. 15(a)(2)). Defendants also noted that District Courts have denied leave to amend for reasons including undue delay without adequate explanation, and prejudice to the nonmoving party. *Id.* at 3-4 (citing cases from the First Circuit). Defendants argued that it would be

[1] Her discrimination and retaliation claims under Title VII are capped at $50,000 in compensatory damages because Defendant Electrolizing, Inc. employs fewer than 101 employees. 42 U.S.C. § 1981a(b)(3).

inequitable to allow the Plaintiff to lull them to sleep by leading them to believe that they were defending a case with a damages cap of $50,000, only to remove that cap by adding new counts at the close of discovery – especially when Plaintiff was aware of the basis for (and, indeed, threatened to bring) the additional claims prior to the outset of the litigation. *Id.* at 4. Defendants also noted that – in addition to being prejudiced by suddenly facing potentially unlimited liability – the removal of the damages cap also unfairly prejudiced them because the close of discovery was upon them, and defending the new claims might require additional discovery. *Id.* at 6.

Plaintiff's reply memorandum merely asserted that Defendants should have known that Plaintiff would bring the FEPA claims because she previously notified Defendants of the possibility. (Doc. #24 at 2-3). She also argued that Defendants could not require more discovery because the elements of the FEPA and § 1981 claims are the same as the Title VII claims. *Id.* at 4-6. Additionally, Plaintiff attempted – unsuccessfully – to distinguish the cases that Defendants cited that upheld denials of leave to amend for reasons such as undue delay. *Id.* at 7-9.

At the oral argument, despite the fact that she had already submitted two briefs totaling thirteen pages on this motion, Plaintiff presented three new cases as counter-authority to that which Defendants cited previously. (Transcript of Motion Hearing, April 28, 2008 (Doc. # 44) at 8-11. Contrastingly, Defendants expanded upon their argument that it is reasonable to defend a capped-damages case differently than an uncapped damages case. *Id.* at 13. Defendants then went on to explain that they took the unusual step of opposing the motion for leave to amend because the late nature of the motion was emblematic of the constantly moving target that Plaintiff has presented in the course of this litigation and that it was time that the target came to rest so that this litigation can proceed on its merits. *Id.* at 11-13.

Judge Martin issued an order denying in part and granting in part Plaintiff's Motion for Leave to Amend on May 2, 2008. (Doc. # 31). In that order, the Court denied Plaintiff leave to add the FEPA and § 1981 claims. *Id.* at 8. The decision demonstrates a careful consideration of the arguments posed by both Plaintiff and Defendants. Ultimately Judge Martin reasoned that Plaintiff had "not provided a satisfactory explanation for her delay in bringing" the Motion for Leave to Amend Complaint. *Id.* at 7-8. Also, he further explained:

> The proposed amended pleading would expand the scope of this lawsuit late in the proceedings by encompassing matters outside the applicable statute of limitations and by subjecting Defendants to potentially unlimited damages. Defendants reasonably relied upon the allegations contained in Plaintiff's Complaint and will be prejudiced if Plaintiff is allowed to add the claims.

*Id.* at 8. Ultimately, the order directed Plaintiff to file an amended complaint within 14 days changing only the characterization of Defendant Godin from co-worker to supervisor and the FMLA claim from a violation claim to a retaliation claim.[2] *Id.* Plaintiff now appeals Judge Martin's ruling to this Court.

## I. **PLAINTIFF HAS NOT IDENTIFIED A LEGAL ERROR BUT INSTEAD DESIRES TO RE-ARGUE THE FACTUAL UNDERPINNINGS OF THE ORDER.**

Plaintiff must shoulder an onerous burden if she is to successfully appeal Judge Martin's order. A District Court Judge may not reverse an order of a Magistrate Judge on a non-dispositive motion unless the ruling is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A)(4). *See also Caranci v. Blue Cross & Blue Shield of R.I.*, 194 F.R.D. 27, 31 (D.R.I. 2000) ("this Court will review the order granting the motion to amend under the clearly erroneous or contrary to law standard"). The First Circuit has interpreted this standard to mean that a District Court Judge must "accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [the court] 'form[s] a strong,

[2] That amended complaint was filed on Friday, May 16, 2008.

unyielding belief that a mistake has been made.'" *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (quoting *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir. 1990)). The First Circuit has also held that a district court may deny a motion to amend "so long as the record evinces an arguably adequate basis for the court's decision." *Hatch v. Dep't for Children, Youth and Their Families,* 274 F.3d 12, 19 (1st Cir.2001). Plaintiff has completely failed to identify an error of law in the Order.[3]

Plaintiff identifies three "issues"[4] that she argues justify reversal of the Order, none of which constitute errors of law. Specifically she claims (1) no delay in the proceedings would result from allowing the amendments, (2) her reasons for waiting to bring the FEPA and § 1981 claims are valid, and (3) Defendants would not be prejudiced if the amendments were allowed. These alleged "claims of error" all challenge Judge Martin's analysis of the factual circumstances or present new arguments that were not posed to Judge Martin. This is not a proper basis for appeal – it is a request for a "do over" on a *de novo* basis.

Moreover, Plaintiff's arguments miss the point of Judge Martin's order entirely. Judge Martin recognized, as Defendants pointed out in the hearing, that Plaintiff's asserted reasons for seeking to amend so late in this litigation amounted to nothing more than "oops, I forgot." *See*

---

[3] This appeal is yet another example of the schizophrenic and disjointed strategy employed by Plaintiff in this case. Ironically, she now claims – in the context of an appeal from a denial of leave to amend – that she is contemplating seeking leave to amend yet again, this time to add a new defendant. Clearly, either by virtue of deliberate strategy or else simple bumbling, Plaintiff continues to move the target so that Defendants cannot take aim and shoot this case down. The time has come for this case to proceed on its (questionable) merits.

[4] Local Rule (civ) 72(c)(2) requires a "notice of appeal setting forth the basis for the appeal." Although Plaintiff has not filed such a document, presumably her identification of "issues" in her memorandum in support of her appeal is an attempt to comport with this rule. Additionally, Local Rule (civ) 72 (c)(2) requires that an appeal contain "a transcript of any evidentiary hearing(s) before the magistrate judge and/or any statements by the magistrate judge of the reasons for the order or ruling. While Plaintiff did include a copy of the hearing transcript with his appeal, she did not include a copy of Judge Martin's Memorandum and Order, which certainly falls within the meaning of "any statements . . . of the reasons for the order or ruling." Given the fact that Plaintiff was already cautioned by Judge Martin that future filings must comport with the local rules in his order granting in part and denying in part Plaintiff's Motions to Compel (Doc. # 32), these procedural flaws in and of themselves justify denying Plaintiff's appeal.

Doc. # 44 at 11; Doc. # 31 at 5 ("Plaintiff does not explain why she waited until almost the end of the discovery period (which had already been extended) to assert this long promised claim.") He credited Defendants' argument that trial strategy differs when faced with a claim cabined by a damages cap versus a claim of potentially unlimited liability, and recognized that more discovery reasonably would be necessary if the additional claims were allowed. *See* Doc. # 31 at 6-7. Judge Martin's ultimate conclusion was that Plaintiff's prayer for the addition of the FEPA and § 1981 claims was not supported by adequate justification and that the introduction of a longer statute of limitations and unlimited potential liability would prejudice Defendants. *Id.* at 7-8.

## II. PLAINTIFF'S UNTIMELY ARGUMENTS ARE INSUFFICIENT TO WARRANT REVERSING JUDGE MARTIN'S ORDER

Plaintiff's appeal rests on the predicate that if Judge Martin did not find prejudice, or undue delay, or inadequate reason, his decision is necessarily flawed and must be reversed. This predicate is faulty. Judges have discretion to deny leave to amend for many reasons, as long as they justify those reasons. Accordingly, whether Judge Martin was wrong about one, two, or all three of the issues raised by Plaintiff is not dispositive of the appeal.

Rule 15 and the seminal case of *Foman v. Davis*, 371 U.S. 178, 182 (1962) both recognize the fact that reasons exist for a district court, in its discretion, to refuse to grant leave to amend a pleading. Particularly, the United States Supreme Court explained in *Foman*:

> In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion . . . . *Foman*, 371 U.S. at 182.

The decision as to whether to grant leave to amend is within the sound discretion of the district court. Considerations such as unexplained delay, further hold up in the progress of the litigation, or prejudice to the nonmoving party are merely examples of considerations that district courts have cited in the exercise of their discretion when determining whether to permit an amendment. It is an abuse of discretion only when the Court fails to provide any justifying reason for the denial of leave to amend. *See id.*

Even if Plaintiff's "theories" of error were legally significant and not entitled to the high level of deference that this Court usually affords a Magistrate Judge's factual findings, the appeal would fail. Each of the factual issues raised by Plaintiff was correctly resolved by Judge Martin.

### A. Judge Martin Correctly Determined That Plaintiff Had No Valid Reason For Delay In Bringing The Amendment.

In an attempt to demonstrate clear legal error, Plaintiff improperly introduces evidence of settlement discussions to suggest that it was not until she realized that this case was not going to settle and was – based on the fruits of her discovery – in fact worth more than $50,000, that she realized she needed to bring the FEPA and § 1981 claims. Of course, Plaintiff did not articulate this argument to Judge Martin, but rather makes it for the first time on appeal. Thus, it should not be considered by this Court. *See B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co.,* 382 F.3d 36, 41 (1st Cir. 2004) ("[A] party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court."). *See also Taylor v.U.S. Dept. of Labor*, 440 F.3d 1, 9 (1st Cir. 2005) ("If this petition is properly to be considered . . ., the appellants are required to have raised their arguments [before the administrative body]").

Even if the Court was to consider Plaintiff's new argument for the first time on appeal, it could not find the basis for a "strong, unyielding belief" that the Magistrate Judge erred in his decision. *Phinney*, 199 F.3d at 4. In his memorandum and order, Judge Martin catalogued the reasons – or lack thereof – that Plaintiff asserted in support of her motion for leave to amend. His conclusion was that they were insufficient, and that they ultimately amounted to a lack of explanation for failure to amend until such a late date.[5] Doc. # 31 at 5. It can hardly be said that it was error for Judge Martin to discount an argument that was never presented to him.

Judge Martin cited three cases for the proposition that the moving party must provide a valid reason for the delay in seeking to amend when a considerable amount of time has passed in the litigation – *Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.*, 156 F.3d 49 (1st Cir. 1998); *Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15 (1st Cir. 1979); and *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006). Doc. # 31 at 5-6. In so doing, he even accounted for the fact that the time period that had passed in this case was shorter than that of the cases he cited because of the passage of certain litigation milestones set forth in the Court's pre-trial order. *Id.* at 5 n.3. A mere reading of Judge Martin's decision reveals that it is reasonable on its face, but a brief analysis of the cases he cites shows even more clearly how a denial of a motion to amend is reasonable under the circumstances presented by this case.

In *Acosta-Mestre*, a delay in adding a defendant of more than one year after filing a first amended complaint, and more than six months after announcing his intention to add the defendant was deemed unjustified. *Acosta-Mestre*, 156 F.3d at 52. The court held that Rule

[5] Plaintiff's arguments essentially amounted to a plea of, "this would really help my client." *See* Doc. # 44 at 6 ("It just gives my client a better chance to recover for the harm that she suffered."); Doc. # 44 at 7 ("So we're gearing up towards a trial and we really just need to do what's best, you know, do what's best for our client."). If the standard for granting such motions was only that they help the party seeking leave to amend, no motion would ever be denied. Defendants are unaware of any instance in which a party pursued a motion that was not beneficial to that party. In fact, Defendants would be surprised if a motion, for leave to amend or otherwise, has ever been pressed that was not intended to be helpful to the party that was pressing it.

15(a) was not designed to excuse a lack of diligence on the part of the plaintiff, and thereby impose additional burdens on the court, and described the plaintiff as the "master of his complaint" who could have and should have sought the amendment earlier. *Id.* In *Hayes*, the plaintiff was denied leave to amend when he sought to amend his complaint after the defendant moved for judgment on the pleadings. *Hayes*, 602 F.2d at 19-20. The Court faulted the plaintiff for letting his case "lie fallow for more than two years," and noted that the delay was not the least bit attributable to the court or to the defendant. *Id.* at 20. Similarly, in *Aponte-Torres*, the court denied leave to amend when the amendment sought came a year after the first amended complaint. *Aponte-Torres*, 445 F.3d at 58. The court noted that the plaintiff had ample opportunity to put his best foot forward and that courts "in the responsible exercise of their case management functions, may refuse to allow plaintiffs an endless number of trips to the well." *Id.*

This case is precisely the type of case that the First Circuit has indicated presents circumstances warranting the denial of leave to amend. As Judge Martin noted, Plaintiff's attempt to add the FEPA and § 1981 claims comes – without explanation – seven months after her initial complaint. While Plaintiff claims that Defendants knew for two years that these claims might be coming, the plaintiff in *Acosta-Mestre* had indicated the intention to add an additional defendant six months before moving to amend, and that was denied. *Acosta-Mestre*, 156 F.3d at 52. Judge Martin recognized the prejudice that results from such inaction, and concluded that it was reasonable for Defendants to rely on the fact that the FEPA and § 1981 claims were not brought in reaching the conclusion that Plaintiff had decided not to bring them. Doc. # 31 at 6.

Moreover, in seeking to justify her delay, Plaintiff is talking out of both sides of her mouth – a fact that surely was not lost on Judge Martin. On the one hand, she argues that she

brought the amendment as soon as she realized bringing the additional claims was necessary. On the other hand, she contends that she put Defendants on notice of the fact that there were potential FEPA and § 1981 claims two years before seeking leave to add those claims. It is patently inconceivable that Plaintiff was not aware of the necessity of bringing those claims until recently. Plaintiff cannot claim that evidence uncovered in discovery made her realize that her case was more valuable than she thought, and thus inspired her to add additional claims, but also say that Defendants should have known these claims were coming. This sort of quick-talk and double-speak characterize Plaintiff's approach to this litigation, and Judge Martin was correct to discredit Plaintiff's arguments and disallow leave to amend.

In fact, this argument is precisely the type of argument that failed in *Aponte-Torres*. There, the plaintiff wanted to amend because she faced an imminent adverse judgment on the pleadings, and the court denied her a second bite at the apple, particularly because no new facts led to her decision to seek leave to amend. *Aponte-Torres*, 445 F.3d at 58. Here, Plaintiff asserts no new factual allegations that led to her decision to bring new claims, but rather, she seeks another "trip to the well" in an effort to boost the value of her claim. However, as Judge Martin recognized when he credited Defendants' argument that Plaintiff should not be allowed to lull Defendants into believing they face a limited damages claim, only to spring unlimited claims later, permitting such litigation tactics is not in the spirit of allowing amendments to pleadings under Rule 15 of the Federal Rules of Civil Procedure. *See DCPB, Inc. v. City of Lebanon*, 957 F.2d 913, 917-18 (1st Cir. 1992) (holding that amendment was unduly delayed and therefore did not comport with "the letter or the spirit of Rule 15[]").

**B. Judge Martin Was Correct When He Held That Allowing The Amendment Would Result In Further Delay In The Proceedings.**

Plaintiff alleges that allowing these amendments would not delay the proceedings further. This is incorrect. Judge Martin considered Defendants' averment that changing the playing field in this litigation from one with capped damages to one without a damages cap and a broader statute of limitations would likely require a change in litigation strategy that would require additional discovery. Judge Martin even noted that his review of the transcript of the deposition of Plaintiff, taken by Defendants, buttressed his belief that a change in the applicable statute of limitations and an increase in potential liability would likely require additional and/or different questioning. Doc. # 31 at 7. Accordingly, Judge Martin undertook a thorough and meticulous analysis of the effect this amendment would have on this litigation before concluding that these amendments would cause additional delay.

Even if Plaintiff could successfully convince this Court that Judge Martin was incorrect when he found that allowing the amendment would cause further delay in the progress of the case, that conclusion would not necessitate a reversal of his order. Plaintiff cited *Harvey v. Snow*, 281 F.Supp.2d 376, 380 (D.R.I. 1998), for the fact that additional delay in the proceedings is necessary to sustain a denial of a motion for leave to amend for undue delay in seeking the amendment. That, however, is an inaccurate characterization of that case. As noted, *supra*, undue delay and additional delay are merely considerations that inform the sound discretion of the court when determining whether to allow an amendment. *See Foman*, 371 U.S. at 182. In *Harvey*, the Court provided a litany of reasons for refusing to grant leave to amend a complaint, including a failure to provide a reason to the court for waiting so long to bring the amendment, as well as the additional discovery that would be required if the amendment were allowed. *Harvey*, 281 F. Supp. 2d at 380-81. Additionally, the court noted that it would have to reopen discovery

regardless of the extent to which discovery had already been taken if it was to allow the sought amendment, which only lends further credence to the rationality of Judge Martin's conclusion that more discovery would be required. *Id.* at 380.

Plaintiff's reliance on *Harvey* is misplaced. There is no strict requirement that undue delay in bringing an amendment must also result in further delay in the proceedings to support a denial of leave to amend. *See id.* ("At the end of the day, when 'considerable time has elapsed between the filing of the complaint and the motion to amend . . . [plaintiffs have] the burden of showing some valid reason for [their] neglect and delay.' It is clear to this Court that plaintiffs in the present case have failed to sustain that burden.") (quoting *Grant v. News Group Boston, Inc.*, 55 F.3d 1, 6 (1st Cir. 1995)). Thus, Plaintiff's contention that Judge Martin erred because his finding that the amendment would further delay the litigation does not and cannot demonstrate that the record fails to provide even an "arguably adequate basis for the court's decision." *See Hatch*, 274 F.3d 12, 19 (1st Cir.2001). Accordingly, Judge Martin's May 2, 2008 order should be affirmed.

### C. Judge Martin's Finding That The Amendment Would Prejudice Defendants Was Appropriate.

Inexplicably, Plaintiff argues that "Defendants have not met their burden in proving that they would be unduly prejudiced." Plaintiff's Memorandum Is [*sic*] Support of Appeal at 5, 10. This argument is dead on arrival. Plaintiff has mixed up her burdens of proof. Rule 15 does not impose a burden on the party opposing the amendment. Instead, the burden, as always, is on the movant to show that "justice so requires" that she be allowed to amend. In other words it is Plaintiff who must show that Defendants would not be prejudiced, not the other way around. Judge Martin correctly found prejudice based on the fact that Defendants would be forced to

change the nature of their defense because of the longer statute of limitations and potentially greater liability.[6] Doc. # 31 at 8.

In response, Plaintiff points to authority from other jurisdictions that holds that increases in potential liability are not sufficiently prejudicial to the nonmoving party to justify denial of a motion for leave to amend. Doc. # 42 at 10 n.4. None of the cases cited by Plaintiff, however, is availing. In *Pesce v. General Motors Corp.*, 939 F. Supp. 160, 166 (N.D.N.Y. 1996), the Court found that none of the Rule 15 factors – undue delay, bad faith, etc. – was present to warrant denial of the amendment, and then incidentally noted, in dicta, that additional potential liability was not, by itself, prejudicial to the defendant. In *Loovis v. Civetta Corinno Constr. Corp.*, 429 N.E.2d 90, 92 (N.Y. 1981), the New York Court of Appeals determined that amendments to the *ad damnum* clause of complaints, which impose limits on the amount of recovery, are not prejudicial unless they impede the preparation of a case. In each of the cases cited by Plaintiff, the increase in potential liability was from one finite number to another finite number. *See Pesce*, 939 F. Supp at 166; *Loovis*, 429 N.E.2d at 92. By contrast, the amendment proposed by Plaintiff would increase potential liability from a relatively modest amount – $50,000 – to a case without any bounds on damages. Thus, the factual circumstances of this case distinguish it from the cases cited by Plaintiff. Moreover, the holding of those cases was that the increase in potential liability – in and of itself – was not sufficiently prejudicial. *See Pesce*, 939 F. Supp at 166; *Loovis*, 429 N.E.2d at 92. However, Judge Martin correctly found that there are palpable differences in defendant's approach to discovery and strategy in a case with a damages cap versus one without such a cap. Doc # 31 at 7-8.

---

[6] Plaintiff also attempts to argue that Defendants conceded that they were not prejudiced by the § 1981 claim. As an initial matter, this is not true. Defendants conceded only that they could not fathom why this claim was necessary or not redundant. Doc. #44 at 13. Moreover, Judge Martin found that Defendants were prejudiced and would need to take more discovery because of the longer statute of limitations. Doc. # 31 at 8. Regardless, as was explained, *supra*, prejudice is only one type of evidence that will support a denial of leave to amend.

Although Plaintiff eagerly suggests that no rational competent defendant would approach a case – such as this – where consequential damages are approximately $13,000 and there is a statutory cap of $50,000 differently than a case where damages are unlimited, she is simply wrong. When a defendant wrestles with how to approach the defense of a case, it is faced with myriad questions such as what rates they are willing to pay attorneys, how many depositions they should take, and how much to invest in the defense. The answers to all these questions are necessarily informed by the level of potential exposure a defendant faces in a particular case. Judge Martin recognized this reality, and Plaintiff's opinion to the contrary simply does not inspire "a strong, unyielding belief that a mistake has been made." *Phinney*, 199 F.3d at 4.

**CONCLUSION**

For the reasons stated herein, Defendants respectfully request that this Court deny Plaintiff's appeal and affirm the memorandum and order issued by Judge Martin in which he denied Plaintiff leave to amend her complaint to add discrimination and retaliation claims under the Rhode Island Fair Employment Practices Act and § 1981 of the Civil Rights Act of 2001.

Dated: May 28, 2008
Providence, Rhode Island

ELECTROLIZING, INC., ALAN GODIN
and DAVID RICHARDS,

By their attorneys,

*/s/ Adam M. Ramos*
Richard R. Beretta (#4313)
Geoffrey W. Millsom (#6483)
Adam M. Ramos (#7591)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
(401) 274-7200
Fax: (401) 751-0604/351-4607
aramos@apslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the within Response in Opposition to Plaintiff's Appeal of Judge Martin's May 2, 2008 Order through the ECF system on the 28th day of May, 2008, and that notice will be sent electronically to the all counsel who are identified on the Mailing Information for Case No. 07-331S.

/s/ *Adam M. Ramos*

*455183_1.doc*