**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ENID BONILLA, | : | |
| Plaintiff, | : | C.A. No. 07-331S |
| v. | : | |
| ELECTROLIZING, INC., ALAN GODIN and DAVE RICHARDS, | : | |
| Defendants. | : | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Electrolizing, Inc., Alan Godin and Dave Richards, hereby move for summary judgment on all claims asserted by Plaintiff Enid Bonilla in this case. The grounds for Defendants' motion are set forth in the accompanying Statement of Undisputed Material Facts, the Declaration of David Richards, the Declaration of Chris Bejbl, and the supporting memorandum of law.

Dated: Providence, Rhode Island
July 2, 2008

ELECTROLIZING, INC., ALAN GODIN and
DAVID RICHARDS,
By their attorneys,

*/s/ Geoffrey W. Millsom*

Richard R. Beretta (#4313)
Geoffrey W. Millsom (#6483)
Adam M. Ramos (#7591)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 751-0604/351-4607
gmillsom@apslaw.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ENID BONILLA, | : | |
| Plaintiff, | : | C.A. No. 07-331S |
| v. | : | |
| ELECTROLIZING, INC., ALAN GODIN and DAVE RICHARDS, | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Richard R. Beretta (#4313)
Geoffrey W. Millsom (#6483)
Adam M. Ramos (#7591)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
(401) 274-7200
Fax: (401) 751-0604/351-4607

**TABLE OF CONTENTS**

**INTRODUCTION** ........ 1

**FACTUAL BACKGROUND** ........ 3

**ARGUMENT** ........ 8

**I. PLAINTIFF'S FMLA CLAIM FAILS BECAUSE ELECTROLIZING DID NOT EMPLOY AT LEAST 50 EMPLOYEES DURING THE RELEVANT TIME PERIOD** ........ 8

**II BASED UPON THE UNDISPUTED MATERIAL FACTS, PLAINTIFF CANNOT SATISFY HER BURDEN OF PROVING HER DISCRIMINATION AND RETALIATION CLAIMS** ........ 10

A. Plaintiff Cannot Make Out A Prima Facie Case Of Discrimination Or Retaliation Under Title VII ........ 11

1. *Plaintiff Cannot Show That She Could Adequately Perform Her Job Functions Or Identify Similarly Situated Employees Who Were Treated Differently* ........ 11

2. *There Is No Temporal Or Causal Connection Between Plaintiff's Allegedly Protected Conduct And Her Termination* ........ 14

B. The Defendants Had A Legitimate Non-Discriminatory And Non-Relatiatory Reason For Terminating Plaintiff ........ 16

C. Plaintiff Cannot Show That Defendants' Non-Discriminatory And Non-Retaliatory Reason For Terminating Plaintiff Is Merely A Pretext For Discrimination Or Retaliation ........ 19

**III. THE INDIVIDUAL DEFENDANTS CANNOT BE HELD PERSONALLY LIABLE TO PLAINTIFF** ........ 23

A. There Is No Personal Liability Under Title VII ........ 24

B. Even if There Is Personal Liability Under Title VII, It Only Extends To Supervisors, Not Coworkers Like Alan Godin ........ 26

**CONCLUSION** ........ 28

Defendants Electrolizing, Inc., Alan Godin, and Dave Richards (collectively, "Defendants") submit this memorandum of law in support of their motion for summary judgment.

**INTRODUCTION**

Plaintiff Enid Bonilla is a former employee of Electrolizing who was fired for her consistent inability to meet the 40 hour per week requirement of her job. She was an employee hired without any skills, provided valuable training on the UPS shipping system and paid $12.75 per hour (plus benefits) prior to her termination. In this litigation, she seeks approximately $13,000 in back pay (her Title VII claims are capped at $50,000) on the basis of her contention that her termination violated Title VII of the Civil Rights Act of 1964, chapter 21 of title 42 of the United States Code, and the FMLA, 29 U.S.C. §2601 *et seq*. The nature of those violations, however, is far from clear.

On the one hand, Plaintiff claims that one of her coworkers made statements in her presence to which she took offense. For example, she claims that he indicated he did not like salsa music and had asked their supervisor not to hire women. She further claims that she complained about these statements to her supervisor, who took no action and fired her either for discriminatory reasons or (after several months) in retaliation for her complaints. On the other hand, she claims that she may also have been fired after taking time off to be with her sick children, a few days after lying to her supervisor about needing time off to care for her husband after a car accident. (A lie she repeated in an affidavit submitted to the Rhode Island Commission for Human Rights, which she has subsequently acknowledged is perjurious).

Even if Plaintiff's allegations are assumed to be true – as they must be for summary judgment purposes – her claims fail as a matter of law. As an initial matter, Electrolizing does

not employ the requisite number of people to trigger the application of the FMLA. So plaintiff cannot maintain her claim for retaliation or claim any other rights and remedies under the FMLA.

With respect to Title VII, plaintiff cannot carry her summary judgment burden. She cannot even state a *prima facia* case for discrimination or retaliation, because there is no evidence either that she could adequately perform her job functions or that similarly situated employees were treated differently than her by Electrolizing. Rather, the evidence shows that she was a below average employee, unable to do the work required of her position, and that Electrolizing was forced to hire a "helper" to assist her. Similarly, there is no evidence that other employees with poor performance reviews and attendance histories similar to hers were not fired by Electrolizing. If anything, the evidence suggests the opposite. She also cannot show a causal or temporal connection between her purported "complaint" and her termination. She claims to have "complained" months before she was terminated and offers no colorable reason (much less evidence) why Electrolizing would have terminated her, rather than address her alleged "complaints."

Moreover, Electrolizing's legitimate non-discriminatory and non-retaliatory reason for terminating her is rock solid. Plaintiff's time records indicate that she worked fewer that 40 hours in at least 31weeks as a full time employee and fewer that 35 hours in 14 of those weeks. She was counseled on her attendance problems, it was reflected in her annual performance review and – by her own admission – she was given a final warning about missing additional time the very week she was terminated (after missing additional time).

Further, Plaintiff can offer no theory (much less evidence) tending to show that Electrolizing's legitimate reason for terminating her was a pretext for discrimination or

retaliation. All she has is her own belief that she was discriminated or retaliated against, which is patently insufficient to survive summary judgment.

Finally, Plaintiff's claims against Defendants Alan Godin and Dave Richards fail as a matter of law because Title VII does not support individual liability. This issue has been addressed by every United States circuit court of appeals other than the First Circuit and each of these courts has concluded that there is no individual liability under Title VII. This Court should hold likewise. Additionally, in the case of Defendant Godin, the undisputed material facts of this case make clear that he is not even a supervisor and, even in the event of individual liability, would not be a proper defendant.

## FACTUAL BACKGROUND

Defendant Electrolizing, Inc. ("Electrolizing") is a Rhode Island corporation that applies a patented chrome plating process to metal pieces. Bejbl Dep. Tr. at 11-12 (Exhibit A to the Statement of Undisputed Facts)[1]. The patented process adds hardness and lubricity to metal machinery, machine parts and equipment, which is useful in a wide variety of applications in the aerospace, manufacturing, medical, pharmaceutical, food service and other industries. UF Exhibit A at 11-12. Electrolizing's customers send various metal parts and equipment to Electrolizing's plant on Houghton Street in Providence, where they are coated and treated by Electrolizing's employees and, upon completion, are shipped back to the customers. UF Exhibit A at 11-12. Electrolizing employs just under 50 employees. Bejbl Dec., ¶¶ 3-7, Exhibit 3. The majority of them are Hispanic. E. Bonilla Dep. Tr. at 86-87, (UF Exhibit C); Roman Dep. Tr. at 17, (UF Exhibit D).

[1] For simplicity, Exhibits to the Statement of Undisputed Facts will hereinafter be cited as "UF Exhibit __."

Defendant Alan Godin currently works in Electrolizing's shipping department, where he packs the equipment treated by Electrolizing and prepares it for shipping back to the customer. Godin Dep. Tr. at 16, (UF Exhibit B). He has been an employee of Electrolizing for more than twenty-six years. UF Exhibit B at 9. Defendant Dave Richards is a former employee of Electrolizing. Richards Dec., ¶¶ 2, 24. During the time period relevant to this dispute, Mr. Richards held the position of Operations Manager and was Plaintiff's supervisor.[2] Richards Dec., ¶ 2.

Plaintiff began her employment with Electrolizing in March of 2004. UF Exhibit C. Initially, she worked part time in the shipping and receiving areas. UF Exhibit C at 22-23. In or about early 2005, the woman who worked full time in Electrolizing's receiving department (Norma Geranis) announced that she would be retiring and Plaintiff was asked to replace Ms. Geranis. UF Exhibit C at 31; Richards Dec., ¶¶ 5, 7. As Ms. Geranis' replacement, Plaintiff would report to the receiving area in the morning, where she would open the packages that arrived from Electrolizing's customers, process the work for distribution to the appropriate Electrolizing plating areas, and direct it to those areas. Richards Dec., ¶ 8. Once the packages received each day were fully processed, Ms. Bonilla would move over to the shipping area and work with Alan Godin to package and ship the finished products back to Electrolizing's customers. Richards Dec., ¶¶ 8-10; UF Exhibit C at 24. Because Mr. Godin's shift runs from 7:00 a.m. to 3:30 p.m., Ms. Bonilla was expected to handle the shipping responsibilities by herself for the latter part of the day. Richards Dec., ¶¶ 9-10. She was also expected to work overtime, when necessitated by the volume of Electrolizing's work. Richards Dec., ¶ 10.

[2] The term Plant Manager has also been used to describe this position. However, there is no dispute as to the duties encompassed by the position. For simplicity, Defendants will use only the term Operations Manager in this brief.

Ms. Bonilla was not a particularly good employee. Richards Dec., ¶ 11. Her job performance was below average and she consistently had attendance problems. Richards Dec., ¶¶ 11-14. In fact, Ms. Bonilla's performance evaluation reveals that she "exceeded allowable days" and would not "stay late" when necessary. Richards Dec., Exhibit 1. The performance evaluation also indicated that she was "talking too much." Richards Dec., Exhibit 1. Her excessive talking resulted in a lower score in the areas of "Quantity of Work," specifically "Meeting production goals," "Multi Tasking" and "Coordination with other departments." Richards Dec., Exhibit 1. Additionally, her propensity to chat rather than work caused her to be docked in the category of "Teamwork." Richards Dec., Exhibit 1. Overall, her score on the evaluation was 45 points out of a possible 60, a score that was well below average, as compared to other Electrolizing production workers. Richards Dec., ¶ 13, Exhibit 1. Moreover, a review of Plaintiff's time records demonstrates her unreliability with respect to attendance – for every time period between the one that began on October 16, 2005 through the week of her termination, which occurred on February 10, 2006, Ms. Bonilla missed at least one unscheduled partial or full day. Richards Dec., 14, Exhibits 2, 3.; Bejbl Dec., Exhibits 4, 5.

In light of Ms. Bonilla's inability to adequately perform her job requirements by herself, Electrolizing was forced to hire another employee (Anilsa Soriano) to work as Ms. Bonilla's assistant as a "receiving clerk." Richards Dec., ¶ 11; Soriano Dep. Tr. at 16 (UF Exhibit E). Ms. Soriano assisted Ms. Bonilla with the processing of the incoming work for most of the day and then helped Ms. Bonilla with shipping in the late afternoon. Exhibit E at 16 – 18.

On February 3, 2006, Ms. Bonilla informed her supervisor, Dave Richards, that her husband had been in a serious car accident and requested permission to leave work in order to go to the emergency room and be with him. Richards Dec., ¶ 16; *see also* Affidavit of Enid Bonilla

in Support of Complainant's Charge of Discrimination, submitted to the State of Rhode Island and Providence Plantations Commission for Human Rights on Dec. 6, 2006 (UF Exhibit F). Mr. Richards granted Ms. Bonilla permission to leave work early. Richards Dec., ¶ 16; UF Exhibit F, ¶ 24. Shortly after she left, however, her husband called and asked to speak with her. Richards Dec., ¶ 17. It was apparent from his manner that he was not in the emergency room or in any great discomfort or distress. Richards Dec., ¶ 17. Accordingly, Mr. Richards grew concerned that Plaintiff may have fabricated the story about her husband's injuries solely in order to be excused from work early. Richards Dec., ¶ 18.[3]

Mr. Richards was sufficiently concerned about Ms. Bonilla's fabrication of a "serious injury" to her husband that he reviewed her time records and attendance history and made it a point to counsel Ms. Bonilla on her failure to consistently meet the minimum attendance requirements of the job. Richards Dec., ¶ 19, Exhibit 2; UF Exhibit C at 55 ("I also had that meeting with David, where he was telling me about how I wasn't meeting the attendance, or whatever it was."). Nevertheless, a mere two days later, Plaintiff asked Mr. Richards to leave early, this time because her children were sick. Richards Dec., ¶ 20; UF Exhibit C at 55. Mr. Richards granted Ms. Bonilla the additional time off. Richards Dec., ¶ 20. Over the next few days, however, he decided to terminate Ms. Bonilla because of her consistent inability to meet Electrolizing's attendance requirements and work a full 40 hour week. Richards Dec., ¶¶ 21-22.

[3] In fact, Mr. Richards' instincts proved correct. Plaintiff repeated her fabricated story about this car accident and her husband's injuries in an affidavit she submitted to the Rhode Island Commission for Human Rights in support of her charge of discrimination. *See* UF Exhibit F, ¶ 23-24 ("On Friday, February 3, 2006, my husband was involved in a car accident in which his car was totaled. I requested and received permission to leave work three hours early to pick up my husband at the Rhode Island Hospital Emergency Room. [*sic*]"). It was only after her husband was deposed in this case and testified about this purported "car accident" that Plaintiff finally admitted finally the truth: there was not a "serious" car accident, it was a fender bender; Ms. Bonilla did not pick up her husband in the emergency room, he never went to the hospital; the Bonilla family car was not totaled or even damaged in the accident, in fact, his car was not even involved in the accident – at the time of the fender bender, Mr. Bonilla was riding in someone else's car. UF Exhibit C at 95-96. In her deposition, Ms. Bonilla admitted that she perjured herself in her affidavit testimony. UF Exhibit C at 95-96.

On February 10, 2006, Mr. Richards called Ms. Bonilla and her assistant, Ms. Soriano, into his office and informed them of their terminations. Richards Dec., ¶ 23. They were both replaced by a single employee who – to this day – performs all the receiving and shipping functions that were required of both Ms. Bonilla and her assistant, Ms. Soriano. Richards Dec., ¶ 24.

Following her termination, Plaintiff filed a charge of discrimination with the Rhode Island Commission for Human Rights and, upon receiving a right to sue letter, commenced this litigation. *See, generally*, Amended Complaint, (Doc. # 43). She claims that Defendants discriminated against her on the basis of her sex and – inexplicably – her state of national origin[4] and retaliated against her for engaging in conduct protected under Title VII and the FMLA. *See, generally*, Doc. # 43. According to Plaintiff, Mr. Godin made certain remarks disparaging to women and people of Hispanic origin during the course of the time that she worked at Electrolizing. *See, generally*, Doc. # 43. Specifically, she contends that Mr. Godin told Electrolizing's Operations manager not to hire women, told the plaintiff that he thought that women talked too much and did not work enough, and that he didn't like salsa music. *See, generally*, Doc. # 43. Plaintiff further claims that she complained to Mr. Richards about Mr. Godin's comments on many occasions and requested that he investigate her claims and provide her with a written report. UF Exhibit C at 46-48. Defendants deny both that Mr. Godin made the statements attributed to him and that Ms. Bonilla ever complained about the alleged statements to her supervisor. *See* Defendants' Answer to Amended Complaint, (Doc # 51).

Plaintiff seeks approximately $13,000 in back pay damages along with liquidated and punitive damages. Her compensatory damages are capped at $50,000, because Electrolizing

[4] Ms. Bonilla was born in Puerto Rico and is of Puerto Rican ancestry. Because Puerto Rico is part of the United States, her claim of discrimination on the basis of national origin is nonsensical. This motion assumes that Plaintiff intended to assert a race-based discrimination claim and that the Court would interpret the pleadings consistently with her intent.

employs fewer than 100 workers. She also seeks front pay to compensate her for the difference between her Electrolizing wage of $12.75 per hour and her present wage of $12.00 per hour.

## ARGUMENT

Summary judgment is appropriate when there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Livick v. The Gilette Co.*, 524 F.3d 24, 28 (1st Cir. 2008). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show, through materials of evidentiary quality, that such a dispute exists." *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 66 (1st Cir. 2004). "[E]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vasquez v. Lopez-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998). In determining whether summary judgment is appropriate, the court views the evidence in the light most favorable to the non-moving party. *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). In an employment discrimination case, summary judgment is mandated when the "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir. 2001) (quoting *Feliciano De La Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1,5 (1st Cir. 2000)). Throughout this litigation, Plaintiff has relied upon these illusory support beams.

### I. PLAINTIFF'S FMLA CLAIM FAILS BECAUSE ELECTROLIZING DID NOT EMPLOY AT LEAST 50 EMPLOYEES DURING THE RELEVANT TIME PERIOD

The FMLA is crystal clear with respect to the scope of its coverage: "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or

preceding calendar year[.]" 29 U.S.C. § 2611(4)(a)(i). Any employer that falls under the FMLA is required to allow employees to take unpaid leave without fear of losing their job for the reasons catalogued in the statute – *i.e.* serious illness of the employee or a family member of the employee, birth of a child, and adoption. 29 C.F.R. § 825.104(a). If, on the other hand, an employer does not employ the requisite number of employees during the appropriate time period, the FMLA does not apply. *Engelhardt v. S.P. Richards Co., Inc.*, 472 F.3d 1, 2 (1st Cir. 2006) (holding that plaintiff was not an eligible employee under the act because the employer did not have 50 or more employees).

The United States Department of Labor has adopted the "payroll method" as the process by which the number of employees is to be calculated. *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 207 (1997) ("The Department of Labor has likewise adopted the payroll method under the Family and Medical Leave Act of 1993, which defines 'employer' as a person who 'employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.'") (citing 19 U.S.C. § 2611(4)(A)(i) & 29 C.F.R. §§ 825.105(b)-(d)). The payroll method calls for the simple task of counting the number of employees that appear on the employer's payroll for a given week. *See De Jesus v. LTT Card Servs., Inc.*, 474 F.3d 16, 22 (1st Cir. 2007).

Bonilla was terminated on February 10, 2006. *See* Doc. # 43 at ¶ 24. Accordingly, the relevant time period for calculating the number of individuals employed by Electrolizing is 2006 (the "current" calendar year) and 2005 (the "preceding" calendar year). Electrolizing's payroll records reveal that Electrolizing employed 50 or more employees for only 18 weeks in 2005 and

1 week in 2006.[5] Bejbl Dec., ¶¶ 3-7, Exhibit 2, 3. Thus, Electrolizing was not subject to the FMLA during the period of Ms. Bonilla's employment and her FMLA based retaliation claim fails as a matter of law.

## II BASED UPON THE UNDISPUTED MATERIAL FACTS, PLAINTIFF CANNOT SATISFY HER BURDEN OF PROVING HER DISCRIMINATION AND RETALIATION CLAIMS

In employment cases, such as this case, that lack direct evidence of discrimination, the Supreme Court has established a burden-shifting framework by which plaintiffs may attempt to prove cases of discrimination and/or retaliation through circumstantial evidence. *Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 421 (1st Cir. 1996) (discrimination under Title VII); *Mariani-Colon v. Dept. of Homeland Security ex. rel, Chertoff*, 511 F.3d 216, 223 (1st Cir. 2007) (retaliation under Title VII); *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 335-36 (1st Cir. 2005) (retailiation under the FMLA).[6] This burden-shifting framework has come to be known by the name of the case in which it was first articulated: *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell-Douglas* test first requires plaintiff to make out a prima facie case. *Id.* at 802. If the plaintiff is able to make out a prima facie case, the burden then shifts to the defendant to "produce a valid and nondiscriminatory reason for the [adverse employment action]." *Mulero-Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir. 1996). Upon such a showing by the employer, the burden shifts back to the plaintiff to show that

---

[5] Electrolizing's bi-weekly payroll runs actually suggest that the employee head counts were much lower during the relevant time period, because part time employees that did not work during a given payroll period do not appear on the payroll for that period. Bejbl Dec., ¶ 6. In order to ensure that all part time employees were captured in the headcount, Electrolizing created a chart that reflects both the bi-weekly payroll runs and each employee's hire and termination date. Bejbl Dec., ¶ 6. The chart is attached as Exhibit 3 to the Declaration of Chris Bejbl. This chart (and the underlying information) was provided to counsel for Plaintiff in the course of discovery and is admissible in this case pursuant to Fed. R. Evid.1006.

[6] Although, as explained *infra*, Plaintiff's FMLA claim is barred by virtue of the size of Electrolizing's workforce, the *Colburn* case makes clear that FMLA claims are subject to the same *McDonnell-Douglas* analysis as Title VII cases and would also fail for the reasons identified in this section of Defendants' memorandum.

the legitimate, nondiscriminatory reason proffered by the defendant is merely a pretext for discrimination. *Udo v. Tomes*, 54 F.3d 9, 13 (1st Cir. 1995).

### A. Plaintiff Cannot Make Out A Prima Facie Case Of Discrimination Or Retaliation Under Title VII

If a plaintiff in an employment discrimination case under Title VII cannot shoulder the initial burden of establishing a prima facie case, then summary judgment must enter in favor of the defendant. *See Arroyo-Audifred v. Verizon Wireless, Inc.*, No. 07-1661, 2008 WL 2265904, at *3 (1st Cir. June 4, 2008) (upholding grant of summary judgment on grounds that the plaintiff did not establish prima facie case *sua sponte*). In this case, Plaintiff cannot adduce sufficient evidence to make out a prima facie case for either of her claims under Title VII – discrimination or retaliation. Plaintiff was a substandard employee who often missed work when she was expected to be there, *see* Richards Dec., ¶¶ 11-14, and she has made no showing that similarly situated employees were treated differently than she was. That undisputed evidence makes it impossible for her to make out a prima facie case of discrimination. In the same vein, Plaintiff cannot identify any evidence that tends to establish a causal connection between her alleged complaints to Mr. Richards about Mr. Godin and her subsequent termination, thereby making it impossible to make out a prima facie case of retaliation.

#### 1. Plaintiff Cannot Show That She Could Adequately Perform Her Job Functions Or Identify Similarly Situated Employees Who Were Treated Differently

To make a prima facie case of discrimination, Plaintiff must produce evidence to show: "(1) that she is a member of a protected class; (2) that an adverse employment action was taken against her; (3) that she was otherwise qualified for such position; and (4) that a similarly

situated [employee] was treated differently."[7] *DeCaire v. Mukasey*, ___ F.3d ____, 2008 WL 642533, at *11 (1st Cir. March 11, 2008). Plaintiff is indisputably a woman of Hispanic origin, thus she is clearly a member of a protected class. *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S.Ct. 2162, 2187 (2007) (women); *Douglas v. J.C. Penney Co., Inc.*, 474 F.3d 10, 13 (1st Cir. 2007) (race). It is also undisputed that an adverse employment action was taken against her – namely, she was terminated. However, both Plaintiff's complaint and the significant discovery undertaken in this case reveal a dearth of evidence – or even a suggestion – that she was otherwise qualified for the job or that any similarly situated employees were treated differently than she was.

Merely holding an employment position is not proof, in and of itself, that one is qualified for the position she holds. *See Keisling v. SER-Jobs for Progress, Inc.*, 19 F.3d 755, 760-61 (1st Cir. 1994) (holding that that the mere assertion by the employee that she was qualified to perform her job functions was insufficient, without more, to establish that prong of the burden-shifting analysis). All of the documentary evidence presented in this case indicates that Plaintiff's job performance was substandard and that she was, in fact, not qualified to do the job for which she was employed. Plaintiff was not able to fully perform her job functions. Richards

---

[7] Defendants recognize that there is First Circuit precedent that suggests that inquiry into proof of disparate treatment of similarly situated employees is not always appropriate when analyzing Plaintiff's prima facie case. *See Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003) (noting the difference between cases in which plaintiffs assert comparative evidence as part of their prima facie case, and those that do not as relevant to whether treatment of similarly situated employees should be considered at the prima facie case stage). In this case, Plaintiff has alleged that similarly situated employees were treated differently than she was. *See* UF Exhibit F, ¶ 30 ("However, upon information and belief, Mr. Richards allowed several of my male co-workers to be excused from work for longer periods than me, yet these workers were not terminated for excessive absences."). Moreoever, this case is not of the type that an inference of discrimination is proper in the absence of evidence that similarly situated employees were treated differently than she was.

By way of example, in a case in which a black plaintiff is alleging that he was discriminated against on the basis of race when she was not promoted, an inference of discrimination is proper upon a showing that the plaintiff was qualified for the promotion, but the slot was filled by a Caucasian. *See Acevedo v. Johnson & Johnson*, 73 Fed. Appx. 472, 472-73 (1st Cir. 2003) (recognizing prima facie case of discrimination in failure to promote when four men were promoted over qualified women). Where as here, however, the plaintiff is alleging discrimination in connection with a decision to terminate her, an inference of discrimination is unreasonable unless she can show that other employees like her in every way except for race or gender were not terminated.

Dec., ¶ 11. Accordingly, Electrolizing and Mr. Richards hired an additional employee, named Anilsa Soriano, to assist the Plaintiff. Richards Dec., ¶ 11; UF Exhibit C at 31 ("While you were there, did you have anybody helping you in receiving? A. At the beginning, no. Then they hired Anilsa Soriano."). Tellingly, when Mr. Richards terminated Plaintiff for failing to consistently work a full 40 hour week, he terminated Ms. Soriano as well. Richards Dec., ¶ 23. This is because, without Ms. Bonilla and her inability to perform the receiving/shipping job function by herself, there was no need for a reciever/shipper's assistant. Both the plaintiff and Ms. Soriano were replaced by a single employee who performed – and continues to this day to perform – the job functions once performed by both of them. Richards Dec., ¶ 24. Moreover, Plaintiff's performance reviews indicate that she spent too much time at work chatting with co-workers, rather than working productively and note that she regularly missed days or portions of days for which she was scheduled to be at work. Richards Dec., Exhibit 1. There is no credible evidence that Ms. Bonilla was qualified for the position she held.[8]

Similarly, Plaintiff cannot identify any other Electrolizing employees who were similarly situated to her, but were treated differently. To be similarly situated, other employees must mirror Plaintiff in "all relevant respects." *See Rathbun*, 361 F.3d at 76. For example, in *Ortiz Garcia v. Toledo Fernandez*, 405 F.3d 21, 24-25 (1st Cir. 2005), the plaintiff alleged that ten other employees were absent from work in the same manner she was, but that they were not disciplined as she was. However, the court noted that the plaintiff failed "to identify them or provide other information necessary to compare her situation to theirs[,]" and, on that basis,

[8] One witness, Alan Godin, testified in his deposition, when asked to describe what kind of worker Plaintiff was, "I would say she was a pretty good worker." UF Exhibit B. at 35. However, that testimony immediately preceded his testimony that she talked too much, was not productive, and often missed work. UF Exhibit B at 35-36. These are precisely the reasons identified in her performance reviews as shortcomings and failings in her performance as an employee.

upheld summary judgment against the plaintiff because "no inference of discriminatory motive [could] be drawn." *Id.* at 25.

Plaintiff cannot identify any other employees, whether male, female, Hispanic, or non-Hispanic, who were faced with performance reviews similar to hers – indicating a lack of productivity and failure to work the requisite hours, much less show that these unidentified other employees were treated differently than her by Electrolizing. In fact, the evidence shows that Electrolizing regularly terminated employees for excessive absences or failure to meet job requirements. *See* Defendant Electrolizing, Inc.'s Supplemental Responses to Plaintiff's First Set of Interrogatories, at 3-10 (UF Exhibit G) (showing that 9 other employees were terminated for these reasons in the previous 5 years); UF Exhibit E at 18 ("Dave Richards, he wasn't so much of a bad guy, but, like, if you missed one day out of work, that's it, your job was on the line, no matter what excuse you had. Now your job was on the line"), 23-24, 33. Thus, any employees that Plaintiff may have been able to identify as similarly situated to her in "all relevant respects" were likely treated in precisely the same way – they were terminated.

### 2. There Is No Temporal Or Causal Connection Between Plaintiff's Allegedly Protected Conduct And Her Termination

In retaliation cases, the required showing for a prima facie case is altered slightly: "the plaintiff must make a prima facie showing that (i) he engaged in protected conduct, (ii) he was thereafter subject to an adverse employment action, and (iii) a causal connection exists between the protected conduct and the adverse action." *McDonough v. City of Quincy*, 452 F.3d 8, 17 (1st Cir. 2006). Ms. Bonilla cannot satisfy the final prong of her burden; she cannot show a causal connection between her alleged "complaints" about Mr. Godin and her termination.

Although Ms. Bonilla alleges that she was terminated because she complained to Mr. Richards about Mr. Godin's behavior, her "story" includes a huge and inexplicable gap of time

between her complaint and her termination. This large gap in time is fatal to Ms. Bonilla's claim for retaliation under Title VII, because a retaliation plaintiff must show temporal proximity between the protected conduct and the adverse employment decision in order to permit the reasonable inference that a causal connection exists. *See Bennett v. Saint Gobain Corp.*, 507 F.3d 23, 32 (1st Cir. 2007). In *Bennett*, the First Circuit upheld a district court grant of summary judgment because too much time had passed between the protected conduct and the adverse employment decision. The court reasoned: "This temporal gap is sufficiently large so that, without some corroborative evidence, it will not support an inferred notion of a causal connection between the two." *Id.*

In the affidavit she submitted to the Rhode Island Human Rights Commission, Plaintiff swore under the penalties and pains of perjury that she had a meeting with Mr. Richards in October at which she threatened to quit and requested a written report on an investigation. UF Exhibit F, ¶¶ 15-17. At her deposition, Ms. Bonilla thought that she may have been mistaken and the perhaps the meeting with Mr. Richards had taken place in December. UF Exhibit C at 93-94. Beyond those meetings she cannot point to specific times when she complained, but instead just asserts that she complained "maybe every single day." UF Exhibit C at 61. Moreover, there is no documentary evidence to verify that she ever made any complaints.[9] UF Exhibit C at 61 ("Q. But you never put your request in writing? A. No."). In *Bennett*, the plaintiff had filed a grievance. *Id.* Plaintiff here merely represents that she made oral complaints. Without evidence that can establish temporal proximity between the complaints and the adverse employment decision, Plaintiff in this case needs corroborative evidence to establish a prima facie case. *See id.* She has not produced any.

[9] Notably, Electrolizing's policy with respect to complaints of discrimination is that the victim of discrimination submit a signed written complaint within 20 days of the alleged discriminatory behavior. Bejbl Dec., Exhibit 1 at 6.

Ms. Bonilla also has failed to identify any coherent causal link between her allegedly protected conduct and her termination. Even if the Court assumes that she did complain to her supervisor about Mr. Godin and/or certain comments, it does not follow that Electrolizing's termination of Ms. Bonilla must necessarily have been for an improper purpose. There is no evidence that Alan Godin was a favored employee or so indispensable to Electrolizing's operations that the company could not afford to alienate him. Nor is there any indication (circumstantial or otherwise) that Electrolizing tolerated sexually or racially inappropriate comments in the work place. In fact, Electrolizing's Company Information manual specifically prohibits such conduct. Bejbl Dec., Exhibit 1 at 8. Plaintiff cannot merely state that she complained and that she was fired and expect the Court (or a jury) to divine some connection between the two based on the alignment of the stars – she needs to show that the first act caused the second, and she cannot.

Based on the lack of a temporal or causal connection between her alleged complaint and her termination, summary judgment is appropriate on Plaintiff's claim for retaliation under Title VII.

### B. The Defendants Had A Legitimate Non-Discriminatory And Non-Relatiatory Reason For Terminating Plaintiff

Step two of the *McDonnell-Douglas* framework, if the Plaintiff has adduced sufficient evidence to make a prima facie case, shifts the burden of production "to the employer to put forth a legitimate, nondiscriminatory reason for the adverse job action." *Velazquez-Fernandez v. NCE Foods, Inc.*, 476 F.3d 6, 11 (1st Cir. 2007). Simply articulating this reason is sufficient to satisfy Defendants' burden of production on this prong of the *McDonnell-Douglas* test. *Padilla-Garcia v. Guillermo Rodriguez*, 212 F.3d 69, 78 n.8 (1st Cir. 2000) ("[O]nly a limited burden of

production passes to the employer to articulate a legitimate nondiscriminatory reasons for its actions. The employer under Title VII need not submit sufficient evidence to persuade the factfinder because the plaintiff retains the burden of persuasion at all times.") (internal citation omitted). The legitimate, nondiscriminatory reason proffered by the employer need not be perfect, or even rational, but simply must demonstrate a reason that is not based on a characteristic protected under Title VII. *See Thompson v. Coca-Cola Co.*, 522 F.3d 168, 177 (1st Cir. 2008). Accordingly, "Courts may not sit as super personnel departments, assessing the merits-or even rationality-of employers' nondiscriminatory business decisions." *Mesnick v. General Electric Co.*, 950 F.2d 816, 825 (1st Cir. 1991).

Plaintiff was terminated because she consistently failed to work a full 40 hours per week as her job required. Richards Dec., ¶¶ 21-22. In this case, Defendants also have irrefutable, documentary proof in the form of Ms. Bonilla's time records that objectively demonstrate that Electrolizing's non-discriminatory reason is legitimate. Richards Dec., Exhibits 2, 3; Bejbl Dec., Exhibits 4, 5. Ms. Bonilla's time records demonstrate that over the course of 59 weeks of employment, she worked fewer than 40 hours in 31 of them. Richards Dec., Exhibit 3; Bejbl Dec., Exhibits 4, 5. Of those 31 weeks, in 14 weeks she logged fewer than 35 hours and in 2 of those weeks she clocked less than 20 hours. Richards Dec., Exhibit 3; Bejbl Dec., Exhibit 4, 5. The following is a graphical depiction of Enid Bonilla's weekly hourly totals plotted against her weekly requirement of 40 hours:




Bejbl Dec., Exhibit 5.

Additionally, Plaintiff's Employee Evaluation demonstrates that she had been alerted to the fact that her attendance was an issue. Richards Dec., Exhibit 1. In fact, she acknowledges that Mr. Richards counseled her about her attendance on Monday of the week she was terminated. UF Exhibit C. at 55-57; Richards Dec., ¶ 19, Exhibit 2. Thus, Defendants have more than satisfied their "minimal burden of production" of articulating a legitimate, nondiscriminatory reason for Plaintiff's termination. *Webber v. Int'l Paper Co.*, 417 F.3d 229, 234 (1st Cir. 2005).

### C. Plaintiff Cannot Show That Defendants' Non-Discriminatory And Non-Retaliatory Reason For Terminating Plaintiff Is Merely A Pretext For Discrimination Or Retaliation

Even if Plaintiff can clear the hurdle of establishing a prima facie case on her claims, she still must prove – by a preponderance of the evidence – that the legitimate reason produced by Defendants for her termination is merely pretextual. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (holding that the presumption of discrimination "drops out of the picture" once the legitimate, nondiscriminatory reason has been proffered by the defendant); *see also Mariani-Colon*, 511 F.3d 216, 223 (Title VII retaliation); *Colburn*, 429 F.3d at 335-36 (FMLA retaliation). This is a significant hurdle that requires more than simply an attack on the adequacy of the defendant's proffered reason for the adverse employment action. *St. Mary Honor Center*, 509 U.S. at 514-15 (courts cannot "substitute for the required finding that the employer's action was the product of unlawful discrimination[] the much different (and much lesser) finding that the employer's explanation of its action was not believable."). It requires some affirmative evidence that reasonably could support a conclusion that the employer's true motivation was discriminatory or retaliatory in nature. *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 16 (1st Cir. 1994) ("to survive Stratus's summary judgment motion, Smith had to adduce sufficient evidence to support a finding that Stratus's stated reason was not only a pretext, but that it was a pretext for illegal sex discrimination"). As this court has recognized, Plaintiff cannot survive a motion for summary judgment if she "provides no evidence, other than her own belief and speculation, that [the adverse employment action was] in retaliation for any protected conduct." *Bartlett v. American Power Conversion Corp.*, No. C.A. 05-084 ML, 2006 WL 2709404, at * 7 (D.R.I. Sept. 20, 2006).

In this case, Plaintiff cannot point to any evidence adduced in discovery that suggests that Defendants' legitimate non-discriminatory and non-retaliatory reason for terminating her is pretextual. There is no evidence of an inherent bias or prejudice by Electrolizing in its employment practices, in fact Plaintiff admits she has no reason to believe that bias existed:

> Do you have any basis to believe that Electrolizing takes race or nationality into account when they make hiring or firing decisions?
>
> A. No.
>
> Q. What about gender, how is the workforce split along gender lines? Mostly men?
>
> A. Mostly men.
>
> Q. And is there anything that leads you to believe that Electrolizing makes hiring or firing decisions based on gender?
>
> A. No.

UF Exhibit C. at 86. Indeed, given the ethnic makeup of its workforce, the evidence suggests a clear lack of bias or prejudice in Electrolizing's hiring practices. Similarly, Plaintiff has adduced no evidence that any other employees were similarly situated and treated differently than her, which is one of the most common means of attempting to debunk employers' non-discriminatory, non-retaliatory reasons.

What she is left with – and what she seeks to present to the jury – is her unsupported speculation that Electrolizing may have been willing to continue to employ her despite her inability to work 40 hours per week, but for the fact that she is a Hispanic woman who complained about offensive remarks by a co-worker. She can offer no reason beyond her own supposition why Electrolizing would choose to retain other Hispanic workers (who make up the majority of its workforce), but not her. Nor can she point to any evidence that tends to show why Electrolizing would choose to terminate her, rather than confront one of her co-workers who

she alleges to have made racially and sexually insensitive remarks. Yet, this "missing" proof is precisely the type of evidence that courts require in order for an employment plaintiff to demonstrate prejudice.

For example, in *Feliciano De La Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 4 (1st Cir. 2000), the Plaintiff alleged that she was discriminated against on the basis of her Puerto Rican origin when she was fired. The defendant countered that she was terminated due to unsatisfactory job performance. *Id.* at 7. In analyzing whether the defendant's proffered reason was merely pretext, the court noted that "the question is not whether Feliciano was actually performing below expectations, but whether El Conquistador believed that she was." *Id.* The plaintiff produced evidence of having received a raise and commendations, which the court agreed belied the defendant's contention that she was not performing her job adequately. *Id.* Nevertheless, the court upheld summary judgment because despite evidence that refuted the proffered non-discriminatory reason, the plaintiff had failed to produce evidence sufficient to support a finding that her termination was based on discriminatory motives. *Id.* at 9. Particularly, the court reasoned that the plaintiff's assertions that Puerto Ricans were fired more regularly than employees from other backgrounds was wholly unsupported by the record, as was her claim that the executive committee was without Puerto Rican members. *Id.* at 8-9. Accordingly, the court held that if it were to remand the case for trial, "the jury 'would be left to guess at the reasons behind the pretext.'" *Id.* at 9 (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 10 (1st Cir. 1990)).

Similarly, in *Udo v. Tomes*, 54 F.3d 9, 10-11 (1st Cir. 1995), a doctor was laid off, and he sued on the basis of race and age discrimination. He asserted that the layoffs were racially discriminatory because during the rounds of layoffs, in which he alleged four of nineteen

physicians were laid off, all of the Caucasian physicians were retained while the only black physician and the only Asian physician were let go. *Id.* at 13. However, the defendant noted that only two physicians were laid off, and both were laid off from the same facility and did not exercise "bumping" rights whereby they could have moved to a different facility and kept their jobs. *Id.* The court presumed that the defendant's proffered reason might have been pretext for something, but on the basis of the record concluded that the plaintiff had failed to "create a genuine issue of triable fact[,]" and affirmed summary judgment.

In the retaliation context, the court in *Mariani-Colon v. Dept. of Homeland Security ex rel. Chertoff*, 511 F.3d 216, 223 (1st Cir. 2007), the plaintiff engaged in a protected activity when he complained of racial discrimination to the human resources department and the Equal Employment Opportunity Commission. The plaintiff was terminated two months after his complaints, and the court determined that the termination was a sufficient adverse employment action to make out a prima facie case and that the temporal proximity between the complaint and the action met the burden of establishing a causal connection for purposes of making out a prima facie case. *Id.* at 223-24. However, the employer asserted that the termination arose because the plaintiff failed to report to work after his leave concluded. *Id.* at 224. Thus, the burden shifted back to the plaintiff to show pretext. *Id.* The plaintiff lacked any evidence other than temporal proximity, and the court concluded that such evidence was insufficient to "make a colorable showing that an adverse action was taken 'for the purpose of retaliating' against him." *Id.* (quoting *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997)).

Each of these cases indicates that once an employer has shifted the burden back to the plaintiff in a discrimination or retaliation case, the onus on the plaintiff is not only to show that the employer's proffered reason was pretextual, but also to produce evidence that would permit

the trier of fact to conclude that the real reason was discriminatory or retaliatory animus. *See Feliciano De La Cruz*, 218 F.3d at 9 (discriminatory animus); *Mariani-Colon*, 511 F.3d at 224 (retaliatory animus). As the First Circuit has regularly recognized, "[c]ourts may not sit as super-personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions." *Mesnick v. General Electric Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Moreoever, although the above-discussed cases provide examples that are germane to the analysis of this case, evaluation of whether the proffered nondiscriminatory or nonretaliatory reason for the adverse employment action is pretext for illegal conduct must be decided on the "individual facts." *See McDonough*, 452 F.3d at 19 (quoting *Thomas*, 183 F.3d at 57). As this court has recognized, Plaintiff cannot survive a motion for summary judgment if she "provides no evidence, other than her own belief and speculation, that [the adverse employment action was] in retaliation for any protected conduct. *Bartlett v. American Power Conversion Corp.*, No. C.A. 05-084 ML, 2006 WL 2709404, at * 7 (D.R.I. Sept. 20, 2006).

## III. THE INDIVIDUAL DEFENDANTS CANNOT BE HELD PERSONALLY LIABLE TO PLAINTIFF

In addition to suing her employer, Electrolizing, Plaintiff has also named Alan Godin and Dave Richards as defendants in this case in their individual capacities. Doc. # 43. In order to make out a claim against either of them however, Plaintiff must assume that her causes of action give rise to personal liability. That assumption is faulty.

The First Circuit has not issued a decision on whether individual defendants who are supervisors/agents of the employer may be held liable under Title VII, but nearly every other

circuit has – holding that Title VII does not create personal liability.[10] *See* discussion, *infra*, Part III.A. Moreoever, district court decisions from the First Circuit have come down on both sides of the issue. Thus, the overwhelming weight of authority suggests that personal liability under Title VII is improper. Accordingly, Defendants Dave Richards and Alan Godin cannot be held liable under the statute, and summary judgment should enter in their favor on all counts. Moreover, even if personal liability is cognizable under the statute, such liability can only be ascribed to supervisors. Plaintiff has not identified any evidence that could prove that Mr. Godin acted in a supervisory capacity over her. Thus, there is no set of circumstances under which Mr. Godin could be subject to any liability, and, therefore, summary judgment must enter in his favor on all counts.

### A. <u>There Is No Personal Liability Under Title VII</u>

Every federal circuit court of appeals that has addressed the question of whether or not there is individual liability under Title VII has decided the answer in the negative. *See Thanongsinh v. Board of Educ.*, 462 F.3d 762, 771 n.7 (7th Cir. 2006); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000); *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999) ("supervisors, sued in their individual capacities, are not included within the statutory definition of "employer" under Title VII and its sister civil rights statutes, and accordingly cannot be held personally liable for discrimination"); *Huckabay v. Moore*, 142 F.3d 233, 241 (5th cir. 1998); *Greenlaw v. Garrett*, 59 F.3d 994, 1001 (9th Cir.1995); *Lankford v. City of Hobart*, 27 F.3d 477, 480 (10th Cir. 1994); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991); *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996); *Lissau v.*

[10] Other than the First Circuit, only the Federal Circuit has failed to weigh in on this issue. Given the nature of the Federal Circuit's jurisdiction, it likely will never face this question. So, practically speaking, every circuit, save the First, has rendered a decision on the question of whether personal liability exists under Title VII.

*Southern Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). Although the First Circuit has not yet had occasion to consider the issue, there is no good reason to believe that it would find personal liability and create a 10 – 1 split among the circuits.

Ironically, two decisions from this district – both decided by Judge Lageaux – reflect the rare occasions in which a judge has imposed personal liability under Title VII. *See Wyss v. General Dynamics*, 24 F. Supp. 2d 202 (D.R.I. 1998); *Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562 (D.R.I. 1996). Other District Court Judges in the First Circuit fall in line with the majority view of no personal liability.[11] *See, e.g., Gomez-Gonzalez v. Guidant Corp.*, 364 F. Supp. 2d 112, 116 (D.P.R. 2005); *Booker v. Mass. Dept. of Public Health*, 527 F. Supp. 2d 216, 229 n.19 (D. Mass. 2007); *Preyer v. Dartmouth College*, 968 F. Supp. 20, 25 (D.N.H. 1997) ("it is well-settled law in this district that there is not individual liability under Title VII").; *Miller v. Hall*, 245 F. Supp. 2d 191, 194 (D. Me. 2003) ("Individual liability is inconsistent with the language and remedial framework of Title VII. The presence of an individual owner of a corporate defendant in a Title VII action is superfluous. (internal citation omitted)). The majority approach recognizes that the Congressional intent behind the passage of Title VII was not to punish individual supervisors, but to provide for recovery by employees who faced discrimination in the workplace from the employer. *See, e.g., Horney v. Westfield Gage Co.*, 95 F. Supp. 2d 29, 34 (D. Mass. 2000) ("the accompanying legislative history clearly indicates that those remedies were meant to provide an additional deterrent to "employers," not individuals") (citing legislative history). These courts reason that the statutory language defining "employer" to include agents of the employer was

[11] The only other District Court case Defendants have uncovered that have imposed personal liability are *Lamirande v. Resolution Trust Corp.*, 834 F. Supp. 526, 529 (D.N.H. 1993). However, this case is no longer good law as later cases from the District of New Hampshire make it clear that the state of the law in the jurisdiction is that Title VII does not create personal liability. *Preyer v. Dartmouth College*, 968 F. Supp. 20, 25 (D.N.H. 1997) ("it is well-settled law in this district that there is not individual liability under Title VII").

designed not to create personal liability in supervisors, but rather to provide for vicarious liability and place some limits on employer liability for the acts of its employees. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 763-64 (1998). Judge Lageaux, in contrast, declined to probe the legislative intent because:

> a court should recognize that such deviations [from the plain meaning of the language of the statute] should be rare. They should occur where the statute's literal reading conflicts with itself or where there is demonstrable evidence that the literal reading is entirely at odds with the drafters' intentions.
>
> In this case, the statute is unambiguous and there is neither an internal conflict nor a conflict with Congress' intent.

Wyss, 24 F. Supp. 2d at 206. Although this Court should certainly consider and give credit to the *Wyss* decision,[12] it should also be mindful that "[o]n a pure question of statutory construction, [the court's] first job is to try to determine congressional intent[.]" *Dole v. United Steelworkers of America*, 494 U.S. 26, 35 (1990).

This Court should rule consistently with every federal circuit court of appeal that has considered the issue and the majority of other district courts in this circuit and hold that there is no personal liability under Title VII. On this basis, it should dismiss Plaintiff's claims against Mr. Richards and Mr. Godin.

**B. Even if There Is Personal Liability Under Title VII, It Only Extends To Supervisors, Not Coworkers Like Alan Godin**

Even if Mr. Richards and Mr. Godin were subject to personal liability under Title VII, summary judgment must enter for Mr. Godin because the undisputed facts reveal that he did not hold a supervisory position at Electrolizing and he was not Plaintiff's supervisor. Even the *Wyss* case, in one of the very few decisions even to find personal liability under Title VII, limited

[12] In the intervening 10 years between the decision in *Wyss* and the present, myriad cases have been decided on this question by the various district courts in the First Circuit. Each and every one of them has held that personal liability does not exist under Title VII, only adding further credence to the reasoning that the intent of the legislature was not to impose such liability.

liability "employee(s) exercising supervisory power or control within a company." *Id.* (quoting *Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 571 (D.R.I. 1996). Similarly, in *Showalter v. Allison Reed Group, Inc.*, 767 F. Supp. 1205, 1210-11 (D.R.I. 1991), the court explained that one of the defendants, who acted as general manager and had the power to hire and fire employees was a supervisor for Title VII purposes, but another defendant who had "no authority to make any personnel decisions" was not.[13] The court reasoned that "[a] co-worker who is not the employer's agent with the power to supervise can not be held liable under Title VII." *Id.* at 1211. Accordingly, the court determined that the general manager faced potential liability while the other employee did not, despite the plaintiff's belief that such employee was a supervisor. *Id.* at 1210-11. Likewise, employees are considered supervisors and therefore agents of the employer only when there is "immediate (or successively higher) authority over the [complaining] employee," *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). This authority includes the ability "to make critical employment decisions on behalf of his employer." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007). The operative question is whether the harassing employee "had sufficient control over the plaintiff to be considered her supervisor." *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1271 (10th Cir.1998).

As the undisputed evidence reveals, Mr. Godin was not plaintiff's supervisor. Mr. Godin has worked in the shipping department at Electrolizing for more than 20 years. UF Exhibit B at 9; UF Exhibit A at 77. He has never worked outside of the shipping department, nor has he ever been given supervisory duties. UF Exhibit B at 20-21. Mr. Godin's sole job is to pack the completed products and ship them to their destination. UF Exhibit B at 16-17. He reports to the plant manager, or operations manager. UF Exhibit B at 17-18. To the extent that he ever gave

[13] The issue in *Showalter* was not whether personal liability existed under Title VII, but whether the employees about whose actions the Plaintiff complained were the type of employees that gave rise to employer liability. *Showalter*, 767 F. Supp. at 1210-11.

directions to other employees, including Ms. Bonilla, it was only in response to questions about how to properly pack products to be shipped. UF Exhibit B at 20-21, 35; Richards Dec., ¶ 25. He never fired anyone, never asked that anybody be fired, and never recommended that someone be fired. UF Exhibit B at 22-23; Richards Dec., ¶ 25. In fact, Mr. Godin has no authority to exercise any control over any other employees at Electrolizing, and holds no influence over any employment decisions, whether it was hiring, termination, promotion, pay rate, etc. Richards Dec., ¶ 25. These undisputed facts regarding Mr. Godin's role at Electrolizing fall woefully short of demonstrating that Mr. Godin had the ability "to make critical employment decisions on behalf of his employer." *See Craig*, 496 F.3d at 1054.

In her deposition, Ms. Bonilla freely admitted that Mr. Godin did not have power to hire or fire her. UF Exhibit C at 26. She also acknowledged that Mr. Godin never gave her a performance review, had no power over her compensation, was not the person she was supposed to talk to about taking time off or the person to whom she was supposed to direct issues that required supervisory input. UF Exhibit C at 26-27. The only indicia of authority over her that Ms. Bonilla was able to identify was the fact that, as a new employee, Mr. Godin trained her and showed her the ropes. UF Exhibit C at 26-27. This is patently insufficient to justify a conclusion that Mr. Godin "had sufficient control" over Ms. Bonilla such that she could be considered her supervisor. *See Wright-Simmons*, 155 F.3d at 1271. Therefore, Mr. Godin is entitled to judgment as a matter of law dismissing him from the case.

## CONCLUSION

For all the foregoing reasons, Defendants Electrolizing, Inc., Alan Godin, and Dave Richards respectfully request that this Court enter summary judgment in their favor on all counts of Plaintiff's Amended Complaint.

Dated: Providence Rhode Island
July 2, 2008

ELECTROLIZING, INC., ALAN GODIN and DAVE RICHARDS,

By their attorneys

/s/ *Geoffrey W. Millsom*

Geoffrey W. Millsom (#6483)
Adam M. Ramos (#7591)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
(401) 274-7200
Fax: (401) 751-0604/351-4607
gmillsom@apslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing Memorandum of Law in Support of Defendants' Motion for Summary Judgment through the ECF system on the 2nd day of July, 2008, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case C.A. No. 07-331-S

/s/ *Geoffrey W. Millsom*

*457554_2.doc*