**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ENID BONILLA,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLIZING, INC., ALAN GODIN and DAVE RICHARDS,<br><br>Defendants. | : | C.A. No. 07-331S |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Electrolizing, Inc., Alan Godin and Dave Richards submit this reply memorandum in further support of their Motion for Summary Judgment.

## INTRODUCTION

Plaintiff's opposition brief consists of a disjointed and confusing series of purported "facts" that she claims are material and preclude the issuance of summary judgment. These "facts" generally are not material. In many cases, they do not rise to the level of "evidence," and often they are not accurate or supported by anything other than Plaintiff's speculation or newly-minted sworn testimony that flatly contradicts facts to which she previously has testified. The purported "facts" presented by Plaintiff in her opposition brief are an alternative to citation, discussion and analysis of the relevant First Circuit caselaw. Notably, she does not take issue with the law as articulated by Defendants. Instead, she simply glosses over the cases that demonstrate the burden and evidentiary requirements incumbent on an employment

discrimination plaintiff seeking to avoid summary judgment. Upon inspection, the reason is obvious: she cannot meet her burden.

Plaintiff's intent is obviously to place before the Court as many "facts" as she can muster – regardless of how tangential, immaterial or inadequately supported by the evidence – in the hope that the Court will either seize on one or two, or give weight to the whole assortment and decline to issue summary judgment rather than wade through the mess she has created. Despite 47 pages of writing, however, Plaintiff is unable to coherently articulate how or why her purported "facts" could conceivably fit together to justify a conclusion by the factfinder that she was terminated for any reason other than her undeniable record of coming in late, leaving early and otherwise failing to work the hours expected of her by her employer, much less than the reason for her termination was the fact that she is Hispanic and/or a woman. Nor can she identify any reason, much less evidence, that would permit a juror to conclude that she was fired for complaining about a coworker's comments rather than for her inconsistent attendance. These "big picture" issues demonstrate most effectively why her claims should be dismissed.

When examined, as they must be, through the *McDonell-Douglas* framework, the evidentiary shortcomings of Plaintiff's claims are even more apparent. On some of the claims, she does not even attempt to make out a *prima facie* case; on others, her showing is insufficient. Although she tries to undermine the integrity of Defendants' non-discriminatory and non-retaliatory reason for her termination, Plaintiff simply cannot adduce evidence that is competent, credible or sufficient to overcome the indisputable fact of her erratic work attendance as reflected in her own time records. Nor can Plaintiff identify sufficient evidence to demonstrate that Electrolizing's stated reason for termination is a pretext for discrimination or retaliation.

## ARGUMENT

As the non-movant, Plaintiff is obligated to come forward with competent, admissible evidence in order to survive a motion for summary judgment. *Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 219 (1st Cir, 2008); *Livick v. Gilette Co.*, 524 F.3d 24, 28 (1st Cir. 2008). She must adduce specific facts to counter those set forth by Defendants. *Arroyo-Audifred*, 527 F.3d at 219. In an employment discrimination case where – as here – motive and intent are at issue, the Plaintiff "may not meet [her] burden by citing an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." *Id.* at 219-220.

### I. PLAINTIFF ACKNOWLEDGES THAT SHE CANNOT MAKE OUT A PRIMA FACIE CASE OF DISCRIMINATION OR RETALIATION

Although Plaintiff does not dispute the burden of proof on the first *McDonnell-Douglas* prong that was set out in Defendant's initial memorandum, she inexplicably fails even to attempt to show several of the required elements. She identified no similarly situated non-Hispanic employees who were treated differently from her and thereby concedes her race-based discrimination claim. She similarly declines even to attempt to show a causal connection between any allegedly protected conduct and her termination, which forfeits her retaliation claims. Although she does attempt to state a *prima facie* case of sex-based discrimination and to make some of the required showing for retaliation, she cannot come up with competent, admissible evidence to satisfy her burden.

#### A. Plaintiff Does Not Contest Her Inability To Identify Similarly Situated Non-Hispanic Employees Who Were Treated Differently

In their initial memorandum, Defendants argued that Plaintiff could not make out a *prima facie* case of race or sex-based discrimination under Title VII because she "cannot identify any

other Electrolizing employees who were similarly situated to her, but were treated differently." Defs.' Mem. at 13 (Docket No. 57) (citing *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 76 (1st Cir. 2004); *Ortiz Garcia v. Toledo Fernandez*, 405 F.3d 21, 24-25 (1st Cir. 2005). Plaintiff did not contest this point in her opposition brief and, thereby, tacitly admits this evidentiary shortcoming that is fatal to her case. Accordingly, summary judgment may enter with no further analysis by the Court with respect to Plaintiff's claim of race-based discrimination under Title VII.

### B. Plaintiff Cannot Identify Any Similarly Situated Male Employees Who Were Treated Differently

In the course of her argument regarding the "pretext" phase of the *McDonnell-Douglas* burden shifting test, Plaintiff does suggest that there was one similarly situated male employee (Erisson Carrasco) who was treated differently from her, but this argument is neither accurate nor supported by any evidence. Thus, even if the Court were to consider it in the context of Plaintiff's obligation to show a *prima facie* case of sexual discrimination, it would not satisfy Plaintiff's burden. (Of course, even if considered by the Court, this argument by Plaintiff would be irrelevant to Plaintiff's obligation to make out a *prima facie* case of race-based discrimination and could not even potentially save that claim because Mr. Carrasco, like Plaintiff, is Hispanic.) Carassco Dep. Tr. at 7.

In any event, Plaintiff is incorrect that the evidence shows that Erisson Carrasco was similarly situated to her. To be similarly situated, other employees must mirror Plaintiff in "all relevant respects." *Rathbun*, 361 F.3d at 76; *see also Ortiz Garcia*, 405 F.3d at 25. There is no evidence tending to show that Mr. Carrasco's employment record was blemished by the same attendance issues as Ms. Bonilla; that he had below-average performance reviews, like Plaintiff; or that he ever failed to meet his hours requirement, much less that he did so consistently over an extended period of time as did Plaintiff.

There is, in fact, no evidence in the record regarding Mr. Carrasco's performance reviews from which the Court may draw a comparison to Plaintiff. Similarly, although Mr. Carrasco testified that he had on occasion arrived at work late and not been subject to discipline, there is no evidence that he consistently arrived late as Ms. Bonilla's time records indicate she did. Similarly, there is no evidence tending to show that Mr. Carrasco ever had an issue with his supervisor because he took extra long lunch periods in order to leave the plant in order to pick-up and drive a relative to work, as Plaintiff did. E. Bonilla Dep. Tr. at 40-42; Richards Dep. Tr. at 248-50. Nor is there any evidence tending to show that Mr. Carrasco habitually left work early without permission and with warnings from his supervisor as there is for Plaintiff. Richards Dep. Tr. at 223; 226.

In his deposition, Mr. Richards testified regarding Ms. Bonilla's repeated, unexcused absences, as follows:

Q. Then why couldn't you stop her from leaving work? When you say you can't stop -- you can't stop someone, do you mean –

A. How would I physically stop her from leaving?

Q. Oh, of course you can't physically stop her.

A. So what could I do?

Q. How about, "If you leave, you're fired."

A. And I said, "Be advised" -- and I told her numerous times -- "you are in excessive absenteeism. You risk the chance of being fired." And if you go back and look at what I've talked about before, I counseled her before that. And she continued to leave.

[. . .]

A. Numerous times I told her she's needed here; she shouldn't leave. Okay?

Q. And did you say it was –

A. And it was clear that she was not to leave.

Q. Did you say, "This will count as an unexcused absence?"

A. Yes.

Q. When?

A. I told her numerous times, and said, "You are already -- you are at risk of losing your job because of excessive absenteeism."

Q. Did you give her a verbal warning?

A. Numerous times.

Richards Dep. Tr. at 223; 226. Without similar evidence – and there is none – Plaintiff cannot hope to show, much less prove that Mr. Carrasco and Plaintiff were similarly situated in any, much less all, relevant respects.

Even if Mr. Carrasco had been similarly situated to Plaintiff, any suggestion that Mr. Carrasco was treated differently from Plaintiff would contradict the evidence. As Plaintiff points out, Mr. Carrasco was granted leave by Electrolizing to travel to the Dominican Republic to assist in his family's efforts to immigrate to the United States. Carrasco Dep. Tr. at 19-20. This situation is not in any way similar to Plaintiff's excessive absenteeism. Unlike Mr. Carrasco's Dominican Republic trip, which was planned and announced to the company months in advance,[1] Plaintiff's attendance issues were erratic, unpredictable, could not be planned for and

---

[1] Mr. Richards explained in his deposition:

Q. I'm suggesting that, for example, Erisson Carrasco took three weeks off, and the company was able to function properly. Correct?

A. Because of the large amount of time notice beforehand, yes.

Q. But he was able to give you notice in that scenario.

A. He also needed a large block of time. It's not the same as someone saying, "I need to leave four hours today." He had a block of time and let me know months in advance of three weeks. That's easy to schedule around. He also –

Richards Dep. Tr. at 240.

resulted in scrambling by Electrolizing to cover Plaintiff's responsibilities. Mr. Richards explained that when Ms. Bonilla left early with little or no prior notice, he was forced either to find another employee to work overtime and cover her responsibilities or even to perform her work himself. Richards Dep. Tr. at 281. It is simply not accurate to equate a planned trip out of the country involving months of advance notice with last minute notification by Plaintiff that she needed to leave early or come in late because, in Mr. Richards' words: she was doing "anything from driving someone to somewhere, going to get her car fixed, [or] going to a lawyer's appointment [as] she told me once." Richards Dep. Tr. at 224.

### C. Plaintiff Has Failed To Adduce Evidence Tending To Show That She Was "Otherwise Qualified" For Her Position

Plaintiff attempts to meet the "qualification" prong of her Title VII prima facie burden with a series of unsupported allegations and speculation that both miss the point of Defendants' argument and are inaccurate. Defendants argued that Plaintiff was not qualified for the position because: 1) Electrolizing was required to hire a "helper" to assist her and because both Plaintiff and the helper were terminated at the same time and replaced with a single person and 2) she could not make the required time commitment.

Plaintiff first argues that she must have been qualified or she would not have kept her job for as long as she did. This argument flies in the face of First Circuit law. *See Keisling v. SER-Jobs for Progress, Inc.*, 19 F.3d 755, 760-61 (1st Cir. 1994) (holding that that the mere assertion by the employee that she was qualified to perform her job functions was insufficient, without more, to establish that prong of the burden-shifting analysis). Plaintiff next attempts to minimize Dave Richards' sworn testimony that Plaintiff's performance was below average by characterizing it as a "bald assertion" and suggesting that Defendants have an obligation to prove the veracity of the testimony by proffering and comparing the performance reviews of other

employees. This reflects a fundamental misunderstanding both of the burden of proof and the significance of sworn testimony. Dave Richards' testimony regarding a matter within the scope of his personal knowledge is competent, admissible evidence. It is Plaintiff's burden to rebut this evidence; it is not Defendants' burden to bolster it.

Finally, Plaintiff argues – without any evidentiary support or citation of any kind – that Electrolizing hired someone of "roughly equivalent qualifications" to replace her. This is not only rank speculation, it also is simply not true. There is no evidence in the record regarding the qualifications of Plaintiff's replacement and Plaintiff's conclusory (and inaccurate)[2] assertions should be disregarded out of hand by the Court.

**D. Plaintiff Does Not Dispute Her Inability To Show A Causal Link Between Her Alleged "Complaint" And Her Termination**

In their initial memorandum, Defendants pointed out that the fundamental logical and evidentiary gaps in Plaintiff's retaliation claims precluded her from making out a *prima facie* case under Title VII or the FMLA. Specifically, they argued that Plaintiff could not show a causal or temporal connection between her alleged "complaint" regarding Alan Godin and her termination. In her opposition brief, Plaintiff did not even attempt to demonstrate a causal connection and essentially throws in the towel on the issue of a temporal connection by relying on her "new" testimony, rather than accounting for her original chronology.

The absence of a causal link between Plaintiff's purported complaint regarding Alan Godin and her termination is in many ways emblematic of Plaintiff's entire case. Even if the Court were to assume (as it must) that Plaintiff actually did complain to Mr. Richards of Alan Godin's alleged comments, it cannot conclude that she was fired because of that complaint

[2] Given the lack of materiality of this evidence and the plethora of other immaterial, tangential facts introduced by Plaintiff, Defendants decline to supplement the record with Mr. Roarke's qualifications and pre-Electrolizing job history. Should the Court find this information relevant, Defendants will provide it.

absent either additional evidence that the complaint was in fact Electrolizing's motivation, or a coherent and logical reason why Electrolizing would fire Plaintiff in lieu of appropriately addressing the situation. There is no evidence that Electrolizing sought to protect Mr. Godin or supported the points of view that are ascribed to him by Plaintiff. Nor is there any indication that Electrolizing condoned racial or sexual harassment in the workplace. Indeed, the Company Information manual prohibits such conduct and Dave Richards testified unequivocally that he would terminate an employee who engaged in harassment. Bejbl Dec., Exhibit 1 at 8 (Document 60); Richards Dep. Tr. at 112-113.

Instead of proffering a reason why Electrolizing would fire Plaintiff rather than address her purported "complaint," Plaintiff simply asks the Court to assume a connection. As explained in Defendants' initial memorandum, this is precisely what the First Circuit prohibits. *See Bennett v. Saint-Gobain Corp*., 507 F.3d 23, 32-33 (1st Cir. 2007); *Ramos v. Roche Products, Inc.*, 936 F.2d 43, 49 (1st Cir. 1991); *King v. Town of Hanover*, 116 F.3d 965, 968 (1st Cir 1997); *see also Kosereis v. Rhode Island*, 331 F.3d 207, 217 (1st Cir. 2003)("It is insufficient for [Kosereis] to simply recount that he complained and that he was disciplined. In fact, the warning letter Kosereis received in 1981 and the disciplinary proceedings that were initiated against him in 1995 demonstrate that Kosereis had been disciplined for instances of absenteeism well before the alleged discrimination took place."). If Plaintiff cannot articulate, much less show through evidence, a causal connection, she cannot make out her *prima facie* case of retaliation. *Id*.

In fact, Plaintiff points out a fact in her brief that dooms her retaliation claim – at the end of December 2005, she received a 50¢ per hour raise and a $1,000 year-end bonus. Pltfs.' Mem. at 19. The First Circuit has repeatedly found that raises, promotions and similar positive employment benefits conferred by an employer upon an employee after the date of the alleged

"complaint" or protected activity preclude the finding of a causal connection. *See Bennett v.*, 507 F.3d at 32-33 (declining to find causal link between filing grievance and termination based, *inter alia*, on intervening raise and improved performance review); *Freadman v. Metro Prop. & Cas. Ins. Co.*, 484 F.3d 91, 101 (1st Cir. 2007) (interim salary increases, improved performance reviews and other the factors sufficient to break the causal chain as to retaliation claim); *Houser v. Sears, Roebuck & Co.*, 627 F.2d 756, 759 (5th Cir. 1980 (promotion three days prior to termination defeats claim of age discrimination).

Similarly, Plaintiff cannot overcome the lack of temporal connection between her alleged "complaint" and her termination. As with much of her testimony, Plaintiff's story has "evolved" as the case has progressed and she has had a greater opportunity to review the relevant law. In her affidavit to the Rhode Island Commission for Human rights, she testified that she first complained about Alan Godin to Dave Richards in October 2005. Defendant's Statement of Undisputed Facts (Document 58), Exhibit F, ¶ 15. This time period leaves her retaliation claim subject to dismissal based on the 4 month passage of time alone. *See Mor On-Barbados v. Department of Ed.*, 488 F.3d 472, 481 (1st Cir. 2007) (passage of 4 months between complaint and termination defeats inference of causal connection based on temporal proximity); *Calero-Cezero v. United States Dept. of Justice*, 355 F.3d 6, 25 (1st Cir. 2004 ("Three and four month periods have been insufficient to establish a causal connection based on temporal proximity."). Now, curiously, she thinks she may have complained in December, which – coincidentally – is two months before she was terminated and within the outer limits of First Circuit caselaw. In essence, Plaintiff seeks to survive summary judgment by creating an issue of fact as between her former testimony and her current testimony. This tactic should not be countenanced by the Court. Combined with the absence of any argument (or evidence) as to a causal connection, the

Court has ample reason to find that Plaintiff cannot make out a *prima facie* case of retaliation under either Title VII or the FMLA.

## II. PLAINTIFF CANNOT SHOW THAT ELECTROLIZING'S LEGITIMATE REASON FOR TERMINATING HER IS A PRETEXT EITHER FOR DISCRIMNINATION OR RETALIATION

Once an employer has proffered a legitimate lawful reason for the termination in the summary judgment context, the plaintiff must "do more than impugn the legitimacy of the employer's asserted justification; he must also adduce evidence of the employer's discriminatory animus." *Vega v. Kodak Caribbean*, Ltd., 3 F.3d476, 479 (1st Cir. 1993). Plaintiff, however, cannot adduce sufficient competent, admissible or credible evidence to either undermine the legitimacy of Defendants' reason for terminating her or to show that Defendants' true motivation was other than what it Defendants purport it to be.

### A. Plaintiff Cannot Disprove The Fact That She Simply Could Not Meet The Time Commitment Required By Electrolizing

Plaintiff unsuccessfully attempts to counter the evidence of her time records and their long-term cumulative effect with a series of new facts and theories, none of which undermine or impugn the inescapable fact that she was fired because she did not (or would not) work the number of hours expected of her by Electrolizing.

For example, Plaintiff suggests for the first time,[3] on the basis of her new affidavit, that she was not required to work 40 hours per week and that her "hours" ran from 10:00 am to whenever her work was finished. Pltfs.' Mem. at 26-27 (Docket No. 62). As an initial matter, it defies credibility for Ms. Bonilla to assert that she did not have an hourly requirement – neither

[3] At no point prior to her summary judgment opposition brief did Plaintiff ever suggest that she did not have a 40 hour week requirement, despite the fact that Defendants have made an issue of her inability to work 40 hours since their initial response to the Rhode Island Commission for Human Rights. Indeed, true to form, Plaintiff has herself consistently taken the position that she worked 40 hours per week when calculating her perceived damages for settlement purposes or whenever else it suits her purposes in this litigation.

Electrolizing nor any other manufacturing-type company permits its employees to simply work when they think they should. Electrolizing's Company Information manual makes clear that "Hours of Work" are from 7:00 am to 3:30 pm (with thirty minutes for lunch) for most employees or 8:00 am to 5:00 pm for clerical, quality control, sales and managerial personnel. Bejbl Dec., Exhibit 1 at 12. Significantly, both published schedules contemplate a minimum 40 hour week. So too does the overtime policy, which indicates that overtime is any hour over 40 hours per week. Bejbl Dec., Exhibit 1 at 12. Further evidence of the fact that Plaintiff was not simply able to leave work when she deemed it appropriate is her performance review and, specifically, the fact that she lost points for not staying "late." Richards Dec., Exhibit 1 (Document 59). This concept of "late" as indicated in the performance review clearly indicates that Electrolizing had an expectation for Plaintiff's work hours, which were communicated to her orally and in writing at her performance review, at a minimum.

Perhaps more to the point, Ms. Bonilla testified in her deposition that her work day started at 9:00 am, not 10:00 am as she now claims: "Basically because if I was to come in, let's say at 9:00, mainly at 9:00, before receiving would start, I didn't have an end time."
E. Bonilla Dep. Tr. at 29; 30-31. While Plaintiff's start and finish time admittedly varied, the indisputable and overwhelming body of evidence unquestionably reveals that she was never scheduled to start work at 10:00. Plaintiff's "assistant" testified that she recalled that they began work at 8:00 am and worked until at least 4:00 pm each day. Soriano Dep. Tr. at 17. Most tellingly, her documented time records reveal that she did not at any point in the history of her full-time employment by Electrolizing ever regularly begin work at or about 10:00 am as she now falsely claims in her affidavit. Bejbl Dec., Ex. 3. Ms. Bonilla has simply perjured herself once again in order to advance her case.

Plaintiff also argues that she should have been permitted to apply her vacation time against her numerous early departures and late arrivals, despite the fact that Electrolizing's Company Information manual clearly precludes this practice.[4] Bejbl Dec., Exhibit 1 at 19 ("**No ½ day or partial vacation days may be taken.**)(emphasis in original). She also suggests that she had vacation time available to her on the date she was fired. Not only is this argument irrelevant to the issue of whether she was actually fired for failing to consistently work 40 hours per week, it is incorrect. Electrolizing's Company Information manual expressly states that each new "year" for vacation purposes begins on November 1 and that vacation is earned according to a formula, and, in Plaintiff's case, at a rate of her hours worked multiplied by a factor of .038. Bejbl Dec., Exhibit 1 at 19. So, assuming Plaintiff worked 40 hours per week during the 14 weeks running from November 1, 2005 to the date of her termination (an overly generous assumption), she would have had earned between two and three days of vacation (14 weeks x 40 hours = 560 hours; 560 hours x .038 = 21.28 hours; 21.28 hours @ 8hrs/day = 2.66 vacation days). At the time of her termination, she had already taken 5 vacation days for the year. Having already "borrowed" two unearned vacation days, Plaintiff is in no position to complain that Electrolizing should have reconfigured its benefit and vacation policies just to allow her to leave early whenever she wished.

Plaintiff also attempts to cast doubt on Electrolizing's reason for terminating her by suggesting that Mr. Richards has been inconsistent in stating the reasons for the termination. Specifically, Plaintiff points to the notes of an investigator for the Rhode Island Department of

[4] Electrolizing's vacation policy also required employees to request a supervisor's permission at least a day in advance of a planned vacation day, in order to allow the company to plan and cover for the loss of production. Curiously, for all her melodramatic claims to have been a "team player" and doer of "good deeds," Plaintiff does not – because she cannot – claim that she ever sought permission a day in advance for her early departures or late arrivals. Mr. Richards testified that Plaintiff generally informed him of her need to leave work on the day that she planned to take time off. Richards Dep. Tr. at 224.

Employment and Training ("RIDET"). This argument is a bit silly. For one thing, the unauthenticated, double-hearsay RIDET investigator's brief notes are not competent or credible evidence as is required in order to oppose a summary judgment motion. *See Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 425 F.3d 67, 76 (1st Cir. 2005) ("Hearsay evidence is not admissible at trial or for summary judgment purposes"). For another thing, it is patently ridiculous to suggest that a RIDET investigator's brief notes of his interview with Mr. Richards could somehow impeach Mr. Richards' first hand testimony that is stated consistently in an affidavit and under cross-examination in a deposition.

Finally, Plaintiff's suggestion that Electrolizing and Mr. Richards had a rigid progressive discipline policy that was somehow not adhered to with respect to Ms. Bonilla's termination is completely contrary to the evidence. As the testimony cited in Plaintiff's opposition brief makes clear, Mr. Richards' practice of giving warnings prior to terminating an employee was more of a general way of dealing with his subordinate employees than an inflexible company rule that Plaintiff was entitled to have stringently applied. There is absolutely no evidence that this was an Electrolizing company policy. Thus, there is no basis from which Plaintiff can argue that progressive discipline was part of the terms and conditions of her at-will employment. Moreover, the evidence is clear, overwhelming and largely uncontested that Plaintiff received myriad "warnings" regarding her excessive absenteeism, including in her written performance review, numerous verbal warnings and one-to-one counseling immediately prior to her termination. Richards Dep. Tr. at 223, 226; Richards Dec., ¶ 19, Exhibits 1 & 2; E. Bonilla Dep. Tr. at 55-57. If anything, Plaintiff was given an abundance of warnings, chances and "progressive discipline" prior to her termination for excessive absenteeism.

**B. Plaintiff Cannot Identify Any Legitimate Evidence Tending To Show That Electrolizing's True Motivation For Her Termination Was Discriminatory**

As set out in Defendant's initial brief, Plaintiff's burden to show that Electrolizing's stated reason for her termination is merely a pretext is significant and requires Plaintiff to come forward with evidence tending to show that Electrolizing was motivated by discriminatory or retaliatory animus. *See St. Mary Honor Center*, 509 U.S. 502, 514-15 (1993); *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 16 (1st Cir. 1994); *Bartlett v. American Power Conversion Corp.*, No. C.A. 05-084 ML, 2006 WL 2709404, at * 7 (D.R.I. Sept. 20, 2006). This is a standard that is stringently applied by the First Circuit, as evidenced by several cases discussed at length in Defendants' initial brief. See Defs.' Mem. at 21-23 (discussing *Feliciano De La Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 4 (1st Cir. 2000); *Udo v. Tomes*, 54 F.3d 9, 10-11 (1st Cir. 1995); *Mariani-Colon v. Dept. of Homeland Security ex rel. Chertoff*, 511 F.3d 216, 223 (1st Cir. 2007)). As with all of the law cited by Defendants, Plaintiff does not dispute the standard for proving an employer's pretext, she merely offers a hodgepodge of irrelevant and/or unsupported facts in an unsuccessful effort to meet her burden of proof.

To this end, Plaintiff attempts to ascribe to Electrolizing the alleged sexist and racially insensitive statements of Alan Godin, an attribution that is unsupported by any evidence. Mr. Godin was a co-employee, not a supervisor or person with any authority at Electrolizing. Even if this Court assumes that Godin actually made the comments alleged by Plaintiff, those comments cannot be deemed to have been made by Electrolizing or reflective of Electrolizing's true motivation for terminating her absent some evidence that Electrolizing agreed with Mr. Godin's alleged comments. Similarly, for Plaintiff to suggest that a comment by Mr. Richards (which he denies) regarding Plaintiff taking care of her children at the time of her termination is somehow a cleverly disguised sexist comment is a stretch. See *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 6

n.7 (1st Cir. 1998) ("Isolated or ambiguous remarks, tending to show animus based on [sex], are insufficient, standing alone, to prove an employer's discriminatory intent.") (quoting *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 626 (1st Cir. 1996)). No reasonable factfinder could conclude that such a comment by Mr. Richards to Plaintiff made at a time when he would have known her children were sick was anything other than innocuous or, perhaps, even compassionate. *Santiago*, 138 F.3d at 6 n.7 ("remarks must be [v]iewed in context to determine if animated by discriminatory intent.") (quoting *Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341, 348 (1st Cir. 1996)).

Plaintiff also makes much of a note placed in Mr. Godin's personnel file after her attorney sent a demand letter to Electrolizing in which Electrolizing's owner indicated that he had notified Mr. Godin of Ms. Bonilla's allegations and placed Godin on notice that he would be disciplined if those allegations were proved to be correct. As an initial matter, it is important to recognize that, from Electrolizing's perspective, Plaintiff's demand letter was the first notice of her allegations. Electrolizing contends that she never complained about any sexist or racist comments while employed at Electrolizing. They have also denied her allegations in this case and believe them to be false. The note was placed in Mr. Godin's file merely to make a record of the fact that he would be subject to discipline (and termination) if the discovery process revealed Plaintiff to be anything other than dishonest – which it has not. The note was not a reprimand, it is not "discipline," it does not reflect any sort of acknowledgement by Electrolizing that Ms. Bonilla's allegations are valid and it is not in any way relevant to the issues in this case.

Ultimately, Plaintiff is left with no competent, admissible evidence with which to satisfy her burden of proving pretext under the law of this Circuit. Indeed, as discussed above, in addition to a lack of evidence, she is without even a coherent theory from which this Court can

infer that Electrolizing's motivation was discriminatory or retaliatory. As such, she cannot get past the impact and effect of her erratic, inconsistent and, most importantly, insufficient hours as conclusively demonstrated through her own time and attendance records.

## III. PLAINTIFF'S NEWLY-MINTED HOSTILE WORK ENVIRONMENT CLAIM FAILS

Despite having failed to plead a hostile work environment claim or raise it previously in this case, Plaintiff now claims that summary judgment cannot enter because the evidence supports this cause of action. Again, Plaintiff is wrong because she has not considered the law.

In order for an employer to be held liable for a hostile work environment, the harassing conduct must be undertaken by a supervisor, or, if not undertaken by a supervisor, the employer must not have taken reasonable steps to prevent the harassing conduct. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762-63 (1998). If an employer maintains a policy for handling complaints of discrimination and harassment, and a complaining employee fails to avail herself of the protections of that policy, that failure will defeat a claim for a hostile work environment. *Faragher,* 524 U.S. at 807-08; *Burlington Indus., Inc.*, 524 U.S. at 762-63. *See also Pomales v. Celulares Telefonica, Inc.*, 447, F.3d 79, 84 n.2 (1st Cir. 2006) ("An employer is not liable if it has an anti-harassment policy with a complaint procedure that an employee unreasonably fails to use."); *Arrieta-Colon v. Wal-Mart P.R, Inc.*, 434 F.3d 75, 86 (1st Cir. 2006).

First, as discussed at length in Defendants' initial brief, Plaintiff cannot show that Alan Godin was her supervisor; he was not. See Defs.' Mem. at 26-28. Moreover, the Electrolizing Company Information manual, which Plaintiff received upon commencement of her employment with Electrolizing, sets forth Electrolizing's policy and procedure for handling complaints of

discrimination and harassment. Richards Dep. Tr. at 54-55; Bejbl Dec., Exhibit 1. That procedure calls for a written complaint to be made to the supervisor. Bejbl Dec., Exhibit 1 at 6 ("All complaints of possible discrimination should be submitted, in written form, to the Human Resources Manager within 20 days of the alleged discriminatory act. The complainant must sign the complaint.") Bonilla admits that she never complained about Alan Godin in writing. Bonilla Dep. Tr. at 61 ("Q. But you never put your request in writing? A. No."). Accordingly, it is undisputed that she did not avail herself of the procedures provided by Electrolizing for combating and preventing discrimination and harassment. Therefore, even if this Court were to entertain Plaintiff's unpled and heretofore unmentioned hostile work environment claim, that claim fails as a matter of law.

**CONCLUSION**

For all the foregoing reasons and the reasons set forth in their initial memorandum, Defendants request that the Court issue summary judgment in their favor.

Dated: Providence Rhode Island
August 1, 2008

ELECTROLIZING, INC., ALAN GODIN and DAVE RICHARDS,

By their attorneys

/s/ *Geoffrey W. Millsom*

Geoffrey W. Millsom (#6483)
Adam M. Ramos (#7591)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
(401) 274-7200
Fax: (401) 751-0604/351-4607
gmillsom@apslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment through the ECF system on the 1st day of August, 2008, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case C.A. No. 07-331-S

/s/ *Geoffrey W. Millsom*

462854_1.doc